*Office of Navajo Labor Relations,* ex rel. *BAILON*
Petitioner-Appellee
*vs.*
*CENTRAL CONSOLIDATED SCHOOL DISTRICT No. 22*
Respondent-Appellant

In the Supreme Court of the Navajo Nation

No. SC-CV-37-00

June 23, 2004

502

Daniel Long, Esq., and Barbara Lucero, Esq., Albuquerque, New Mexico, for Appellant.

Louis Denetsosie, Esq., and Aaron Frankland, Esq., Window Rock, Arizona, for Appellee.

Before BATES ARTHUR, Chief Justice, and FERGUSON, Associate Justice.

Opinion delivered by BATES ARTHUR, Chief Justice.

This case is before this Court on Appellant's Petition for Reconsideration of our previous memorandum decision in this case. We affirm our previous decision.

## I

The facts are taken from the parties' pleadings. The Navajo Nation, in exercise of its sovereign authority, agreed to lease land to Central Consolidated for educational purposes. Lease No. SR-86-805 (January 21, 1986) (Lease). On April 9,

1986, the Advisory Committee of the Navajo Tribal Council approved the Lease and directed Chairman Peterson Zah to sign it. Advisory Committee Resolution No. ACAP-46-86. Chairman Zah signed the Lease on behalf of the Navajo Nation on May 19, 1986. The two relevant sections of the Lease provide:

15. EMPLOYMENT OF NAVAJOS

Lessee shall give preference in employment arising in connection with this lease to qualified, willing and available Navajos and other Indians living on or near the Navajo Reservation during the term of this lease, and in construction of any facilities thereon, to the extent authorized by law.

16. AGREEMENT TO ABIDE BY NAVAJO LAWS

The Lessee and Lessee's employees, agents, and sublessees and their employees agrees to abide by all laws, regulations, and ordinances of the Navajo Tribal Council now in force and effect or may be hereafter in force and effect as long as those laws, regulations, and ordinances do not conflict with state or federal law. This agreement to abide by Navajo laws shall not forfeit rights which the Lessee and the Lessee's employees, and agents enjoy under the Federal laws of the United States Government, nor shall it affect the rights and obligations as an New Mexico public school district under applicable laws of the State of New Mexico.

In July 1995, Ms. Bailon submitted an employment application to Central Consolidated. The secretary position for which she applied was Central Consolidated's Department of Transportation in Shiprock. Ms. Bailon, an enrolled tribal member, was not offered the position. Rather, a non-Indian was hired. Ms. Bailon filed a charge with the Office of Navajo Labor Relations (ONLR), alleging violations of the Navajo Preference in Employment Act (NPEA). ONLR then filed a complaint on behalf of Ms. Bailon with the Navajo Nation Labor Commission.

Central Consolidated filed a motion to dismiss in the Labor Commission proceeding. Central Consolidated argued that as a state entity the tribe has no jurisdiction over the school district's activities. The Labor Commission denied the motion and Central Consolidated appealed.

On appeal, Central Consolidated additionally argued that the Navajo Preference in Employment Act, 15 N.N.C. § 601 *et seq.*, conflicts with the New Mexico Human Rights Act, §28-1-1, *et seq.* NMSA 1978, and was not enforceable according to the Lease. This Court issued a memorandum decision affirming the Navajo Nation Labor Commission. We held that Central Consolidated consented to the application of the NPEA and that the NPEA was not in conflict with the New Mexico Human Rights Act. Central Consolidated filed a Petition for Reconsideration, presenting fuller arguments on the alleged conflict between the NPEA and the New Mexico Human Rights Act. We granted the petition, ordered supplemental briefs, and held oral argument.

## II

The issue is whether the language in Section 16 of the lease evidenced an intent on the part of the Navajo Nation to waive application of the Navajo preference sections of the Navajo Preference in Employment Act in the Lease.

## III

As stated by both parties during oral argument, the key issue is the parties' intent in the Lease. Central Consolidated concedes, as it must, that the NPEA would apply if there were no waiver in the Lease. *See Dale Nicholson Trust v. Chavez*, 8 Nav. R. 417, 428 (Nav. Sup. Ct. 2004) (holding that the Treaty of 1868 recognizes the broad authority of the Navajo Nation over non-Indians on tribal land, including state entities); *see also Merrion v. Jicarilla Apache*, 455 U.S. 130, 145-48 (1982) (a tribe retains general regulatory authority over a lessee in absence of contrary language in the lease). The Lease contains two potentially contradictory provisions. One, Section 15, mandates Navajo preference. The other, Section 16, appears to waive Navajo Nation law when in conflict with state and federal law. The issue is one of fundamental contract construction, as we must reconcile the two provisions.

Central Consolidated argues that the Navajo Nation waived its power to enforce the Navajo preference sections of the Navajo Preference in Employment Act in Section 16 of the Lease. Central Consolidated specifically argues (1) that the Lease is clear on its face and that Section 16 means that New Mexico law applies if there is any conflict with Navajo law, (2) that the NPEA conflicts with §28-1-7 (A), (C) NMSA 1978 of the New Mexico Human Rights Act because the Navajo preference sections of the NPEA require discrimination based on race and/or national origin and finally, (3) that it does not have to comply with Navajo preference under Section 15 because the phrase "to the extent authorized by law" in that section refers to Section 16 and therefore the NPEA does not apply because of the conflict.

ONLR argues that (1) Central Consolidated explicitly agreed to comply with the NPEA, (2) the NPEA and New Mexico Human Rights Act do not conflict because Navajo law preempts New Mexico law within the Navajo Nation and, (3) even if the New Mexico Human Rights Act was not preempted, it prohibits racial or national origin discrimination, not tribal preference. ONLR argues that "Navajo" is a political status, not a racial or national origin distinction.

We decide this case as a matter of contract interpretation, and therefore it is unnecessary to decide whether a conflict exists between the two statutes. We apply two general rules of contract construction. First, each provision of a contract must be given force and effect:

> It is the fundamental rule of contract construction that the entire contract, and each and all of its parts and provisions, including the signatures, must be given meaning, and force and effect, if that can consistently and

> reasonably be done. An interpretation which gives reasonable meaning to all
> its provisions will be preferred to one which leaves a portion of the writing
> useless, meaningless, or inexplicable.

17A Am. Jur. 2d *Contracts* § 386 (1991); *see also* Farnsworth on Contracts § 7.11
(1990). This is consistent with the Navajo Common Law principle that every
word is powerful, sacred, and never frivolous. Under this principle, a contracting
party cannot give their word in one section and take it back in the next. Second, a
specific clause controls a general one:

> Where, however, two provisions so clearly conflict that both cannot be given
> full effect, it is assumed that the more specific the provision, the more likely it is
> to reflect the parties' intent. Accordingly, *a specific provision controls a general one
> and may operate as an exception to it.* Farnsworth on Contracts § 7.11 at 264 (1990)
> (emphasis added).

Under these rules, Central Consolidated agreed to abide by the NPEA. Under
the first rule, Section 15 is not overridden or invalidated by Section 16, as it must
be given meaning. Further, under the second rule, the specific provision in
Section 15 controls the general one in Section 16.

Central Consolidated's argument that "to the extent authorized by law" in
Section 15 refers to Section 16 would improperly extend the plain meaning of
"law" to the Lease itself so that the clause would mean "to the extent otherwise
authorized by this Lease." Under Appellant's theory, assuming a conflict existed
between Navajo preference and the Human Rights Act, Section 16 would negate
the explicit agreement to abide by the NPEA in Section 15. As previously stated,
this interpretation would be counter to fundamental contract construction. The
NPEA provision is stated separately and apart from the agreement to abide by
Navajo law unless in conflict with other laws in Section 16. Central Consolidated
therefore agreed separately to abide by the Navajo Preference provisions of the
NPEA, and must abide by its agreement, whether it conflicts with state law or
not.

Even assuming the two sections were ambiguous, when interpreting a
contract the Court must consider the surrounding circumstances in order to
understand the parties intent:

> In case a contract, or any of its language is ambiguous and uncertain so
> that construction is called for, the surrounding circumstances at the
> time it was made should be considered for the purpose of ascertaining
> its meaning and the intention of the parties.

17A Am. Jur. 2d *Contracts* § 355 (1991). As Chairman of the Navajo Tribal Council,
Peterson Zah signed Resolution CAU-63-85 (August 1, 1985) approving the NPEA
just months prior to signing the Lease on behalf of the Nation. The NPEA, then
and now, requires a separate provision providing that the contracting party
agrees to Navajo preference. The 1985 version of the NPEA, effective October 1,
1985, provided that:

> All transaction documents, including without limitation, leases, subleases, contracts, subcontracts... which are entered into or issued to any employer and which are to be performed within the territorial jurisdiction of the Navajo Nation shall contain a provision pursuant to which the employer and any other contracting party affirmatively agree to strictly abide by all requirements of this Act.

15 N.T.C. § 609(A). The NPEA separately required (and still requires) that there be a specific provision mandating Navajo preference in leases with state entities. 15 N.T.C. §604(B)(4). Based on this statutory mandate in the NPEA, the Navajo Nation and Central Consolidated were required to include Section 15 in the Lease in order to ensure compliance with the NPEA. Language in Section 16 the Lease cannot override that statutory mandate, even if we were to accept Appellant's construction.[1] *See Silentman v. Pittsburg and Midway Coal Mining Co.*, 8 Nav. R. 306, 313 (Nav. Sup. Ct. 2003) (unless the Navajo Nation Council expresses clear intent that standards are different for some, there are no exceptions for lessees from the NPEA).

## IV

Based on the above, the Court AFFIRMS its prior decision.

[1] Appellant suggests that the Advisory Committee of the Navajo Tribal Council had the authority to waive the NPEA requirement due to the general authority granted to the Committee by the Council to approve leases. *See* Navajo Nation Council Resolution No. CJA-1-81, Exhibit A, Section IV(B)(8). However, the general authority to approve leases does not include the authority to waive specific statutory requirements unless the Council explicitly grants such authority. As such grant of authority is lacking in Resolution CJA- 1-81, the Advisory Committee could not have approved a lease without the NPEA provision.