*Phildon Ray JACKSON*
Petitioner-Appellant
*vs.*
*BHP WORLD MINERALS*
Respondent-Appellee
In the Supreme Court of the Navajo Nation

No. SC-CV-36-00

October 7, 2004

Loretta Danzuka, Esq., and Josephine Foo, Esq., Shiprock, Navajo Nation, for Appellant.

R. Thomas Dailey, Esq., Farmington, New Mexico, for Appellee.

Before FERGUSON, Acting Chief Justice, and J. BENALLY, Associate Justice.

Opinion delivered by FERGUSON, Acting Chief Justice.

This case concerns the jurisdiction of the Navajo Nation Labor Commission and its conclusion that Appellee fired Appellant for just cause. Based on our review, we affirm.

## I

The relevant facts are as follows. Appellee BHP Minerals (Appellee) hired Appellant Phildon Jackson (Appellant) to work as an "Utility C" employee. Appellant submitted his employment application, was informed by Appellee that he had been hired, and participated in a two week training at the Navajo Mine, located on trust land within the boundaries of the Navajo Reservation. Appellee assigned him to work at the San Juan Mine, located outside the boundaries of the Reservation. Appellee's human resources office and files for San Juan Mine workers are located at the Navajo Mine.

Before Appellant could begin work, Appellee required him to take and pass a physical examination, which included a drug test. According to Appellee's policies, it will not hire an applicant if he or she fails a drug screening. Appellee offered employment in a letter, conditioning Appellant's employment on a pre-employment physical examination. Appellant signed the letter indicating he accepted the terms of the employment offer. Appellant was scheduled to take his physical before he began work. For some reason, which is not clear in the record, Appellant did not take his physical on the scheduled date, but took his exam seven days after he began work. According to the drug test results, Appellant tested positive for marijuana. Dr. Robert Rhien, the doctor who administered the examination (but did not do the actual testing), testified that he has administered hundreds of pre-employment physical exams over the years of his practice. Before informing Appellee of the results, Dr. Rhien discussed them with Appellant. He then informed Appellee.

After receiving notice of the test results from Dr. Rhien, Appellee took several steps to decide whether to keep Appellant. First, representatives of Appellee's human resources office held a meeting with Appellant to discuss the drug test results, where Appellant attempted to explain how he could have tested positive for marijuana. Appellee then requested that Appellant meet with a substance abuse counselor. The substance abuse counselor reported several other allegedly negative characteristics about Appellant. After that meeting, representatives of Appellee held a final meeting where they informed Appellant that he would be fired. Appellee issued a written termination notice that indicated Appellant was terminated because he had "failed physical."

Appellant filed a charge with the Office of Navajo Labor Relations under the Navajo Preference in Employment Act (NPEA), 15 N.N.C. §§ 201 *et seq.*, and then a complaint with the Navajo Nation Labor Commission. Dr. Rhien testified for Appellee at the Commission hearing. During Dr. Rhien's testimony, Appellant submitted a copy of the laboratory report on his test results, identified in the record as Petitioner's Exhibit 6. Based on the exhibits submitted and the testimony of Dr. Rhien, Appellant, representatives of Appellee's Human Resources Office, and others, the Commission concluded that Appellee fired Appellant for just cause for failing the drug test. This appeal followed.

## II

The issues in this case are (1) whether the Navajo Nation Labor Commission has subject matter jurisdiction over the termination of a Navajo worker when the hiring and training of that worker occurred within the Navajo Nation; and (2) assuming there is jurisdiction, whether Appellant was fired for "just cause" under the Navajo Preference in Employment Act.

## III

As a threshold matter, Appellee argues that the Navajo Nation Labor Commission (Commission) lacked jurisdiction over this case because Appellant worked at the San Juan Mine. According to Appellee, the Commission's authority is co-extensive with the Nation's territorial jurisdiction as defined by the federal "Indian Country" statute, 18 U.S.C. § 1151. Appellee alleges that the mine is located outside the boundaries of the Navajo Nation under that statute. As the land on which the mine sits is not in trust for the Nation or an allotment, Appellee contends the test is whether the land on which the mine sits fulfills the two-part test defining "Dependent Indian Community" announced in *Alaska v. Native Village of Venetie*, 522 U.S. 520 (1998).

Appellant relies on the plain language of the Navajo Preference in Employment Act (NPEA), as codified in the 1995 Navajo Nation Code, which purports to extend the Commission's authority to employers "doing business within the territorial jurisdiction *[or near the boundaries]* of the Navajo Nation[.]" 15 N.N.C. § 604 (emphasis added). According to Appellant, *Venetie* is not applicable, and this Court should apply the plain language of the NPEA. Based on that language, Appellant contends that the San Juan mine area is "near" the boundaries of the Navajo Nation, and therefore under the regulatory authority of the Commission.

Though both arguments assume that the geographical point of reference for our analysis is the San Juan Mine, the Commission did not make that assumption. In upholding its jurisdiction the Commission cited undisputed facts concerning Appellee's activities at its Navajo Mine, which is unquestionably within the territorial jurisdiction of the Navajo Nation. As found by the Commission, the human resources office and the employment records for the San Juan Mine are located at the Navajo Mine. More importantly, Appellant submitted his employment application, was informed by Appellee that he had been hired, and participated in a two week training at the Navajo Mine. Based on these facts, the question is whether Appellee's hiring and training activities within the Navajo Nation trigger the Commission's NPEA authority regardless of where Appellant actually worked.

We recently announced a jurisdictional test for cases involving activity inside and outside the Navajo Nation. In *Pacifcorp v. Mobil Oil*, 8 Nav. R. 378 (Nav. Sup. Ct. 2003), we had to decide whether our courts had subject matter

jurisdiction over a contract dispute between two corporations when one party's performance, the provision of electricity, was inside the Navajo Nation, and the other party's performance, payment for the electricity, occurred outside the Nation. We stated that if there is a "sufficient nexus to activity on tribal land within the Navajo Nation, the cause of action arises there for purposes of the Navajo Nation's jurisdiction." *Id.* at 385.

Under this test, there is a sufficient nexus to employment activity within the Navajo Nation to assert NPEA jurisdiction over this case. Necessary elements to create an employment relationship, hiring and training, occurred within the Navajo Nation. Even though Appellee ultimately assigned Appellant to a different mine, the Appellee's administration of the employment relationship remained at the human resources and records office within the Nation. Under these facts, there is a sufficient nexus to activity within the Nation, and the regulatory power of the Commission extends to the employment relationship between the parties.

Let the parties be clear on our holding. We do not say that the San Juan Mine is or is not within the territorial jurisdiction of the Navajo Nation. As jurisdiction is premised on the activities at the Navajo Mine, we do not need to resolve the question of whether the San Juan Mine is within a "Dependent Indian Community." We explicitly reserve this question for a case where it is necessary to make that determination. Under the facts of this case, the Commission had jurisdiction.

## IV

Turning to the merits of the case, Appellant argues several reasons why the Commission erred. First, he contends that Appellee's termination letter did not provide adequate notice of the reason for his termination. Second, he argues that the Commission erred in concluding Appellee fired him for "just cause." We first discuss the standard of review in NPEA cases.

We review decisions of the Commission under an abuse of discretion standard. *Tso v. Navajo Housing Authority,* 8 Nav. R. 548, 554 (Nav. Sup. Ct. 2004). Among other things, the Commission abuses its discretion when it makes an erroneous legal conclusion, or if its factual findings are not "supported by substantial evidence." *Id.* at 555. We review the legal conclusions *de novo*, with no deference given to the Commission's interpretation of the law. *Id.* Our review of the factual findings is more deferential. *Id.* This Court will find that a decision is "supported by substantial evidence" where, after examining the relevant evidence, a "reasonable mind could accept [the evidence] as adequate to support the conclusion, even if it is possible to draw two inconsistent conclusions from the evidence." *Id.* Here, the facts underlying the Commission's decision are reviewed under the substantial evidence standard. However, whether the notice given was adequate or whether the facts as a matter of law rise to "just cause" are

legal questions we review *de novo. Id.*[1] We now turn to each issue.

### A

Appellant first argues that the termination notice was inadequate under the NPEA. The NPEA requires "a written notification ... citing [the] cause" for the termination. 15 N.N.C. §604(B)(8). One of the main purposes of written notification is to inform an employee of the basis for the adverse action. By this notice the employee is able to pursue legal remedies with an understanding of what facts the employee must address. *Smith v. Red Mesa Unified School District No. 27,* 7 Nav. R. 135, 137 (Nav. Sup. Ct. 1995). Another purpose is to prevent *ad hoc* justifications for termination by requiring the employer to clearly state why an employee's conduct is unsatisfactory. *Id.* This stops the employer from avoiding the just cause requirement by merely stating general displeasure with an employee as grounds for firing. To fulfill these purposes, the notification must be in writing, must be meaningful and reasonably clear in its language, must contain facts supporting the termination, and must be provided to the employee contemporaneously with the adverse action. *Dilcon Navajo Westerner/ True Value Store v. Jensen,* 8 Nav. R. 28, 39 (Nav. Sup. Ct. 2000). Appellant contests the meaningful requirement, contending that the phrase "failed physical" did not clearly alert him of the reason for his termination.

What constitutes meaningful language in a termination notice depends on the whole context of the employment relationship, in that the language is designed to alert a specific employee at a specific place and time of the reasons for the termination. In reviewing the meaningfulness of the notice, we do not look at the bare language in a vacuum, but consider the full interaction between the employer and employee leading up to the notice. In *Red Mesa* we considered the meaningfulness of the notice in the context of contemporaneous documents given to the employee discussing her deficiencies. 7 Nav. R. at 137. As the employer had discussed the reasons it was displeased with the employee's work leading up to the termination, we held that the notice was meaningful, as the employee "fully understood the basis for the [employer's] actions and that she received fair notice of the grounds for her eventual termination." *Id.* We contrast that situation with the one in *Manygoats v. Atkinson Trading Co.,* where the employer merely wrote on a scrap of paper that the employer had "violated

[1] We are aware that *de novo* review of "just cause" announced in *Tso* overrules our previous statements that "just cause" is a factual issue for which we defer to the Commission. *See Dilcon Navajo Westerner/ True Value Store v. Jensen,* 8 Nav. R. 28, 38 (Nav. Sup. Ct. 2000); *Smith v. Red Mesa Unified School District No. 27,* 7 Nav. R. 135, 138 (Nav. Sup. Ct. 1995). However, "just cause" is a statutory term created by the Navajo Nation Council, and therefore the interpretation of that term is properly a question of law for which we give no deference to the Commission. Similarly, the written notification requirement arises from the statutory language, and we further have described the requirement in terms of due process. *See Smith,* 7 Nav. R. at 137. Both elements are legal, not factual, requiring us to review the adequacy of notice as a matter of law.

company policies," with no previous notice of deficiencies or discussion about what violation of "company policies" occurred. 8 Nav. R. at 38 (Nav. Sup. Ct. 2003).

Under this approach, when considered in light of the discussions between Appellant and Appellee leading up to his termination, the notification was meaningful. First, the doctor in charge of Appellant's drug test discussed the results with Appellant. Appellee then held a meeting with Appellant, again to discuss the results. Then, at Appellee's request, Appellant met with a substance abuse counselor. After that meeting, Appellee met again with Appellant to discuss his termination. Here, given the multiple discussions between employer, its agents, and employee, Appellant clearly was on notice of the reason for his termination, and therefore the phrase "failed physical" was sufficient to alert him that he had to argue he did not fail his drug test before the Commission.

B

Appellant makes several arguments why the Commission's conclusion that there was "just cause" is wrong. We focus first on his argument that there was not substantial evidence to find that he tested positive for marijuana. Appellant suggests that this Court adopt a rule used in New Mexico state courts know as the "legal residuum rule." Under this rule of administrative law, a court will not uphold a factual finding of an agency in a case where a "substantial right" is at stake if based only on evidence that would be inadmissible in a court of law. *Trujillo v. Employment Sec. Comm.*, 610 P.2d 747, 748 (1980). According to Appellant, the Commission's finding that he failed his drug test is only supported by inadmissible hearsay testimony of Dr. Rhien, and therefore, under the legal residuum rule, should be rejected as lacking "substantial evidence." The Rules of the Navajo Nation Labor Commission do not require that evidence be admissible under formal rules of evidence, but the Commission may exclude any evidence that is "irrelevant, immaterial, or unduly repetitious." Amended Rules of Procedures for Proceedings Before the Navajo Nation Labor Commission, Rule 15(E). Despite that, Appellant contends that the legal residuum rule is required as a matter of due process.

Though we may adopt a state rule in the absence of Navajo or federal law on the subject, 7 N.N.C. § 204(C) (1995),[2] it is unnecessary to do so in this case. Even assuming we apply the legal residuum rule, there is admissible evidence of the test results. Curiously, Appellant claims the only evidence submitted to the Commission was "a statement and testimony of Dr. Rhien." Appellant's Supplemental Brief at 9. Appellant makes this assertion multiple times, at one point in this brief by stating that "[t]he test result itself was never provided to the Commission *by the Employer* in spite of Appellant's repeated requests that it be provided." *Id.* at 8 (emphasis added). While technically true that Appellee did

2 We apply the version of Section 204 in effect at the time of the filing of this appeal. The Navajo Nation Council amended this section in 2003, changing the placement and language of Subsection (C). Navajo Nation Council Resolution No. CO-72-03 (October 24, 2003).

not provide the results, a cursory review of the exhibits submitted at the hearing and the transcript of the proceedings show that Appellant himself submitted a copy of the test results. During his cross-examination of Dr. Rhien, Appellant submitted Petitioner's Exhibit 6, which is a copy of a report by S.E.D. Medical Laboratories showing that Appellant tested positive for marijuana. Transcript at 164. Appellant and the Commission discussed this document at length with Dr. Rhien, and the document became part of the evidentiary record. Transcript at 164-166, 189-192.

Petitioner's Exhibit 6 would have been admissible in a court of law. First, Appellant himself submitted it, and therefore any objection to its admissibility would have been waived. Second, even assuming Appellee had submitted it, and Appellant had made a timely objection, the report is a "record of regularly conducted activity," that is a "business record," under Rule 26(6) of the Navajo Rules of Evidence. Assuming, for the sake of this discussion, that we look to interpretations of the Federal Rules of Evidence (FRE) for guidance, *cf. Dale Nicholson Trust v. Chavez*, 8 Nav. R. 417, 424 (Nav. Sup. Ct. 2004) (looking to interpretation of federal rules as guidance in absence of an interpretation of the Navajo Rules of Civil Procedure), medical records, including test results, are business records. M. Graham, Federal Practice and Procedure: Evidence §7074 (2000); *see also, e.g., Sheldon v. Consumer Products Safety Comm.*, 277 F.3d 998, 1010-11 (8th Cir. 2002). Also, Dr. Rhien, who has administered hundreds of physical exams like the one administered to Appellant, would have been competent to give testimony as the necessary foundation for the admissibility of the record as a "custodian or other qualified witness." FRE 803(6).

Based on this analysis, there was substantial evidence that Appellant tested positive for marijuana. As Appellant does not argue that failure of his drug test is somehow not "just cause" we find the Commission did not err on this point.

Lastly, Appellant makes several other arguments concerning "just cause," which we consider briefly. Appellant argues that the Commission wrongly used information from Appellee's substance abuse counselor, concerning other alleged negative characteristics of Appellant, as additional justification for the "just cause" firing. Appellant contends it cannot support the "just cause" determination. Appellant also argues that the Commission improperly faulted Appellant for not objecting to the test results prior to his termination. Even if Appellant is correct that the Commission erred, the fact that Appellant failed his drug test is alone enough for "just cause" under Appellee's employment policies. That the Commission added on additional reasons does not take away the separate and independently sustainable reason of failing the drug test. The Commission's purported errors are then harmless.

Appellant also contends that Appellee waived its ability to fire Appellant when it put him to work without first completing the physical. However, as found by the Commission, Appellant was on notice by Appellee's offer letter that

his employment was conditioned on completing the necessary pre-employment physical. His pre-employment physical was scheduled before he started work. For a reason not revealed in the record, he did not actually go to his screening until after he began working. He did get his screening within seven days of his start date. Under these circumstances, we do not believe there was a waiver.

V

Based on the above we AFFIRM the decision of the Navajo Nation Labor Commission.