OPINION

This case concerns the dismissal of Appellant’s complaint brought under the Navajo Preference in Employment Act. We reverse the dismissal and remand with instructions.
I
The salient facts presented before the Navajo Nation Labor Commission (Commission), which are necessary to our review shows the following. Falana Hadley (Hadley) was hired as a Police Officer with the Navajo Nation Police Department (NNPD) and assigned to the Shiprock Police District in January, 2008. She worked under the direct supervision of Lieutenant Dempsey Harvey (Lt. Harvey) until her transfer to the Chinle Police District in 2009. On January 31, 2011 Lt. Harvey also transferred to Chinle and indirectly supervised Hadley. On August 9, 2013, Hadley filed an Individual Charge in the Office of Navajo Labor Relations (ONLR) asserting the NNPD violated 15 N.N.C. §§ 604(B)(8) and (B)(9). Section 604(B)(8) states “[a]ll employers shall not penalize, discipline, discharge nor take any adverse action against any Navajo employee without just cause.” Section 604(B)(9) states “[a]ll employers shall maintain a safe and clean working environment and provide employment conditions which are free of prejudice, intimidation and harassment.”
Concerning 15 N.N.C. § 604(B)(8), Had-ley asserted in her Charge that she was disciplined without just cause on April 3, 2013. Lt. Harvey suspended Hadley for a total of 25 days without pay for insubordination and failure to treat a fellow employee (him) with courtesy. For insubordination, Hadley was suspended for 15 days for refusing to comply with Lt. Harvey’s January 14, 2013 written directive that she provide him with her personal cellular phone number, as supposedly required by General Order 79-15 (1979), and failing to comply with Lt. Harvey’s written directive that she meet with him on January 25, 2013. For failure to treat a fellow employee (him) with courtesy, Hadley was suspended for 10 days for having accosted Lt, Harvey on January 22, 2013 when she confronted him in public as to his requests.
Hadley admitted that she did not provide her cellular phone number to Lt. Harvey, she did not meet with Lt. Harvey, and she did confront Lt. Harvey. However, she disputes that her actions arose to violations warranting disciplinary action. Hadley states she provided her personal cellular phone number to dispatch and her immediate supervisor, Officer in Charge/Sergeant Renita Benally, for emergency call out purposes. She further states that she refused to provide Lt. Harvey with her cellular number because in 2012 Lt. Harvey sent her husband, Sergeant Dean Hadley, an inappropriate text message requesting a photo of his “tits” and she did not want to receive such messages. Hadley also states she did not attend the January 25, 2013 meeting because she did not receive notice of the meeting until one week after the meeting. Furthermore, Hadley states she did confront Lt. Harvey on January 22, 2013 but only after being provoked by these events.
Concerning 15 N.N.C. § 604(B)(9), Had-ley also asserted in her Charge that her suspension without pay is just one example of the pattern or practice of harassment she suffered at the hands of Lt. Harvey. *332 In support, Hadley relates an incident in 2008 where she says while she was employed in Shiprock and Lt. Harvey was her supervisor, he directed her to clean his office and dust his bookshelves, which was not part of her duties as a sworn officer. She believed at the time that he watched her as she dusted, which required her to bend over. Furthermore, he inquired into her personal relationship with another police officer and negatively commented on that relationship, all conduct that she considered to be harassment and intimidation. Hadley also recalls an incident where Lt. Harvey called her into his office, placed her in an interrogative position, accused her of insubordination and demanded to know who was influencing her, a meeting during which Lt. Harvey hit the desk with his fist and shouted at Hadley demanding that she listen to him, causing her to fear imminent physical bodily harm. Hadley also states that while she was pregnant and on light duty status in 2011, Lt. Harvey said to her “back in OJ’s days, officers like you wouldn’t be working.” Complaint, Record at 1. Hadley claims she initiated several complaints under the NNPD grievance procedure to Lt. Harvey’s superiors, who would not take the complaints seriously, and no corrective action would ensue. Premised on the seeming incessant failure of management to address her complaints seriously and her belief that Lt. Harvey was being encouraged by his supervisors, Hadley asserts that the NNPD failed to comply with the Navajo Preference in Employment Act (NPEA).
Pursuant to the Charge, ONLR conducted a fact-finding investigation and on December 2, 2013 issued a Probable Cause Determination concluding probable cause exists that the NNPD violated the NPEA. Thereafter, on December 20, 2013, ONLR issued a Notice of Right to Sue authorizing Hadley to initiate legal action in the Commission.
On February 11, 2014 Hadley, through her attorney, filed an Individual Complaint in the Commission reiterating claims asserted in the ONLR. The NNPD, through the Navajo Nation Department of Justice, filed an Answer on March 24, 2014. After the parties engaged in discovery, the Commission held a final evidentia-ry hearing on September 12, 2014. The NNLC held that employment proceedings are governed by the NPEA, which requires the burden of proof was on the Respondent, here the NNPD, to show by a preponderance of the evidence that it complied with the NPEA. 15 N.N.C. § 611(B). The NNLC further noted all employers shall not penalize, discipline, nor take adverse action against any Navajo employee without just cause. 15 N.N.C. § 604(B)(8). No reference to 15 N.N.C. § 604(B)(9) was made. The Commission dismissed Hadley’s Complaint on March 31, 2015 having concluded that: (1) Navajo Police Department (NNPD) showed by a preponderance of the evidence that Hadley was insubordinate; (2) NNPD showed by a preponderance of the evidence that Hadley failed to treat a fellow employee with courtesy; and (3) NNPD showed by a preponderance of the evidence that Lt. Dempsey Harvey did not harass Hadley.
On April 15, 2015 Hadley filed this appeal challenging only that part of the Commission’s conclusory ruling as to 15 N.N.C. § 604(B)(9) that “[the NNPD] showed by a preponderance of the evidence that Lt. Dempsey Harvey did not harass Hadley.” The Court having determined its jurisdiction under 15 N.N.C. § 613 held oral argument on August 18, 2015. This decision now follows.
II
This is a unique case and the issue which arises is not whether the Commis *333 sion’s dismissal on the facts it established justified dismissal, but rather, whether the Commission correctly viewed Hadley’s complaint as also one for harassment and intimidation and not one for an appeal of a disciplinary action. In our view, a complaint for harassment and intimidation entails a broader scope of evidentiary consideration by the tribunal as opposed to one which simply appeals disciplinary action. The issue in this case is whether the Commission abused its discretion in dismissing Hadley’s complaint upon concluding that Hadley was not harassed.
We review decisions of the Commission under an abuse of discretion standard. The Commission abuses its discretion when it makes an erroneous legal conclusion, or if its factual findings are not “supported by substantial evidence.” Legal conclusions are reviewed de novo, with no deference given to the Commission’s interpretation of the law. Our review of factual findings is more deferential. This Court will find that a decision is “supported by substantial evidence” where, after examining the relevant evidence, a “reasonable mind could accept [the evidence] as adequate to support the conclusion, even if it is possible to draw two inconsistent conclusions from the evidence.” Jackson v. BMP Work Minerals, 5 Am. Tribal Law 446, 8 Nav.R. 560, 568 (Nav.Sup.Ct.2004) (internal citations omitted).
Here, the facts underlying the Commission’s decision are reviewed under the substantial evidence standard. We defer to the factual findings of the Commission. However, whether the facts as a matter of law support the legal conclusion that the NNPD showed by a preponderance of the evidence that it complied with § 604(B)(9) of the NPEA is a legal question that we review de novo. We now review the arguments on appeal.
Ill
Both parties have filed briefs. In her brief, Hadley asserts the Commission erred in its dismissal of her complaint and this Court should not defer to the legal conclusions that she was not harassed because the evidence at trial did not support this conclusion. In its brief, the NNPD states the Commission’s findings are supported by substantial evidence and a reasonable mind could accept the evidence as adequate to support the legal conclusion.
For purposes of our review, we defer to the factual findings of the Commission and presume the findings are supported by substantial evidence.
In support of her argument that she was harassed, Hadley looks to the findings of the Commission. Based on the record, the Commission concluded that Hadley was insubordinate for refusing to comply with Lt. Harvey’s January 14, 2013 written directive that she provide her personal cell phone number considering her knowledge of General Order 79-15[1], her admission that as a police officer she owed a duty to maintain contact with the police district at all times, and her admission to uphold the laws, codes of ethics and conduct that apply to Navajo Nation Commissioned Officers. Final Order, ¶ 34. Additionally, the Commission found Hadley admitted to not providing her cell phone number because in 2012 Lt. Harvey sent a text message to her husband requesting to see his “tits.” Id., ¶ 31. Lt. Harvey was disciplined for this incident. Id., ¶ 33. The Commission also found the police district knew how to *334 reach Hadley during emergencies because her immediate supervisor, Officer-In-Charge/Senior Police Officer Renita Benally, and dispatchers had her telephone number. Id., ¶ 39. As to Hadley suspension for faffing to attend a scheduled meeting with Lt. Harvey to discuss her refusal to comply with his written directive, the Commission found that Hadley did not meet with Lt. Harvey on January 25, 2013 because her supervisor (Sgt. Benally) did not give her the January 22, 2013 written directive until January 29, 2013. Id., ¶ 38. Sgt. Benally also testified she was disciplined by Lt. Harvey for not giving Hadley the written directive until after the scheduled meeting.
The Commission also concluded that Hadley failed to treat a fellow employee (Lt. Harvey) with courtesy. The Commission found on January 22, 2013 Hadley angrily accosted Lt. Harvey at the Chevron station and recklessly sped off in her truck. Id., ¶ 36. Lt. Harvey was in full police uniform and members of the public observed Hadley’s outburst. Id., ¶ 37. Hadley does not dispute the incident. However, Hadley was disciplined by Lt. Harvey, in an unusual situation where Lt. Harvey acted on his own complaint wherein he imposed the maximum penalty for an incident that occurred months earlier with no justification for the inordinate delay.
Furthermore, the Commission concluded that the NNPD showed by a preponderance of the evidence that Lt. Harvey did not harass Hadley because Hadley did not report the 2008 bookshelf cleaning incident and that this type of incident occurred only once during Hadley’s six and half years as a police officer. Final Order, Conclusions at ¶ 6. The Commission found Hadley’s allegation that Lt. Harvey yelled at her and pounded his fist was not supported by specific dates, times and place. Id. The Commission stated the intimidation allegation appears to be Hadley’s attempt to justify her unprofessional conduct toward Lt. Harvey and Hadley is simply rehashing unsubstantiated claims of harassment to support her assertion that Lt. Harvey provoked her to accost him at Chevron, see id., despite the non-disputed bookshelf incident, testimony from Sgt. Benally that Lt. Harvey created a hostile work environment by shouting at subordinates and targeting some persons for particular discipline, id., ¶ 44, and testimony that there are only four women left at the Chinle Police District because of Lt. Harvey’s harassment, id., ¶ 45.
Hadley further argues the primary reason for the erroneous legal conclusion stems from the application of flawed rules of procedure that improperly imposes the burden of proof on the employee, contrary to 15 N.N.C. § 611(B), which states “the burden of proof shall be upon the respondent to show compliance with the provisions of this Act by a preponderance of the evidence.” Hadley asserts the Commission unlawfully focused on her conduct and failed to require the employer to carry its legal burden for the duration of the proceeding because of Rule 15(K) [now Rule 15(1) ] of the Amended Rules of Procedure for The Navajo Nation Labor Commission (September 5, 2013), which states:
Order of Proceedings: The Respondent has the burden of going forward with evidence that they did not violate the NPEA. After the Respondent has rested, the Petitioner may present evidence to support his/her claim. EXCEPTION: The Petitioner has the initial burden of going forward with evidence that Respondent created a hostile work environment and/or harassed, humiliated or intimidated Petitioner in violation of 15 N.N.C. § 604(B)(9). The burden will then shift to the Respondent to show no violation of 15 N.N.C. § 604(B)(9). The *335 Petitioner may rebut the evidence presented by the Respondent.
Under the NPEA, a Charge claiming a violation of rights under the NPEA begins in the ONLR. The ONLR is mandated to conduct an investigation of the Charge as it deems necessary to determine whether there is probable cause to believe the NPEA has been violated. 15 N.N.C. § 610(C)(1). Following the investigation of the Charge and in the absence of a settlement or dismissal, the ONLR may issue a Right to Sue with or without finding probable cause that the employer violated the NPEA. 15 N.N.C. § 610(H)(l)(a)(2), (3). Here, the ONLR issued a Probable Cause Determination, followed by a Right to Sue, plainly stating it has “concluded a fact-finding investigation” and “probable cause exists that [the NNPD] violated ... 15 N.N.C. § 604.B.8 and 604.B.9.” Record at 1. To continue the case upon the issuance of the Right to Sue, Hadley affirmatively filed a Complaint in the Commission where the burden of proof shall be upon the employer to prove that it did not violate the NPEA. 15 N.N.C. § 611(B). The burden of proof includes both the burden of persuasion and the burden of production (also termed the burden of going forward with evidence). Black’s Law Dictionary 223 (9th ed. 2009).
We must read Rule 15(K) in light of 15 N.N.C. § 611(B). In a direct conflict between a statute passed by the Navajo Nation Council and a rule approved, the statute must prevail. Fort Defiance Housing Corporation v. Allen, 5 Am. Tribal Law 408, 8 Nav.R. 492, 499 (Nav.Sup.Ct. 2004). Section 611(B) places both the burden of persuasion and the burden of production on the respondent to show compliance with the provisions of NPEA, as mentioned above. Rule 15(K) states “the Respondent has the burden of going forward with evidence that they did not violate the NPEA” with the exception that “the Petitioner has the initial burden of going forward with evidence that Respondent created a hostile work environment and/or harassed, humiliated or intimidated Petitioner in violation of 15 N.N.C. § 604(B)(9).” The Commission may set its own rules but it may not set a rule that contradicts a direct mandate of the Navajo Nation Council.
We need not fixate on bilagaana concepts of burden of proof for we look to Navajo principles to clarify 15 N.N.C. § 611(B). We said “employment is central to living a good life.” Thinn v. Navajo Generating Station, 7 Am. Tribal Law 558, 564 (Nav.Sup.Ct.2007). “Through employment, the people, both employees and business owners, provide for themselves and their families, and such employment assists them in living a good life.” Thinn, at 564. In accordance with the purpose to foster the economic self-sufficiency of Navajo families, it is imperative that “[a]ll employers shall maintain a safe and clean working environment and provide employment conditions which are free of prejudice, intimidation, and harassment.” 15 N.N.C. § 604(B)(9). So when an employer is required to show compliance with the provisions of the NPEA by a preponderance of the evidence pursuant to 15 N.N.C. § 611(B), the burden of proof in the Commission is appropriately placed on the employer to prove: nizhónígo hahodít’é, requiring the employer to show his place of employment is maintained in harmony. Much like a home, one’s place of employment offers a family of employees where each employee spends a considerable part of the day with great expectations that his/her health, safety and welfare are foremost considerations of the employer. By law, the burden of proof, which includes the burden of persuasion and the burden of production, must be on the employer. *336 Rule 15(K) cannot override 15 N.N.C. § 611(B). Because the Rule 15(K) violates § 611(B)’s explicit requirement, it cannot stand.
In this case, it is the NNPD as the employer that must show its employment conditions are free from prejudice, intimidation and harassment. Hadley raised a series of incidents as to harassment and intimidation, which were substantiated at trial by other officers, including Hadley’s supervisor, who testified that Lt. Harvey created a hostile work environment by shouting and even targeting subordinates for discipline. Further noted was the adverse impact on female police officers and that only four women are left at the Chinle Police District.
Lt. Harvey, on the other hand, was the only person who testified for the NNPD and his testimony was limited to justifying his own conduct in dealing with Hadley. None of Lt. Harvey’s superiors—the command staff of the NNPD—testified as to the NNPD’s General Orders from 1979 and its policies and procedures as to employee grievances and the sound implementation of those governing documents to assure an impartial, independent review that fosters employment conditions which are free of prejudice, intimidation, and harassment. Unfortunately, the proceedings in the Commission were reduced to an extension of the bickering between the two employees with little involvement by the employer.
Despite its authority to compel disclosure of evidence relevant to the Complaint to ensure the burden of proof shall be upon the employer, see 15 N.N.C. § 611, the Commission gathered evidence immaterial to this mandate. Instead, the Commission focused its attention and solicited evidence as to the employee’s conduct rather than focusing on the employer’s conduct and its compliance with the NPEA. With the Commission’s accumulation of evidence as to Hadley’s conduct, this Court is unable to determine on appeal whether the NNPD complied with § 604(B)(9). The Court must therefore reverse the dismissal, reinstate the complaint, and remand the case for a proper determination as to the employer’s compliance with the NPEA.
IV
Based on the foregoing, we REVERSE the March 31, 2015 decision of the Commission. The Complaint is REINSTATED and REMANDED for a determination in accordance with this decision.

. General Order 79-15, which requires all commissioned officers and dispatchers to have residential telephones for the purpose of increasing response in emergency situations, was established in 1979 and does not address cellular phones.