*In the Matter of*
*A.P., a minor*
Petitioner
*vs.*
*TUBA CITY FAMILY COURT*
Respondent
*and concerning*
*Navajo Nation*
Real Party in Interest

In the Supreme Court of the Navajo Nation

No. SC-CV-02-05

May 26, 2005

Judy Apachee, Esq., Flagstaff, Arizona, for Petitioner.

Daniel G. Moquin, Esq., Tuba City, Navajo Nation, for Respondent.

Before FERGUSON, Acting Chief Justice, and HOLGATE, Associate Justice (by designation).

This case concerns the exclusion of a non-Indian minor who admitted a curfew violation in a juvenile delinquency proceeding. Based on the record and the arguments of the parties, we enter a permanent writ of mandamus. Our reasons are set out below.

## I

This matter concerns A.P., a non-Indian child. The Office of the Prosecutor filed a delinquency action in the Tuba City Family Court alleging that A.P. committed a curfew violation under 17 N.N.C. § 531 (as amended by Navajo Nation Council Resolution No. CJA-08-00 (January 27, 2000)). According to the parties, the alleged violation occurred on trust lands within the Navajo Nation. At a preliminary hearing, A.P. admitted the offense. The court ordered that she be placed in the Tuba City Juvenile Detention facility for 180 days.

This case first came before us on a petition for a writ of *habeas corpus*. A.P. argued that a non-Indian child could not be detained in a Navajo juvenile detention facility. We agreed, based on the plain language of the curfew statute, and, pursuant to *In re H.M.*, 8 Nav. R. 572 (Nav. Sup. Ct. 2004), we granted her immediate release. Order of Release, *In re A.P. v. Greyeyes*, 8 Nav. R. 671 (Nav. Sup. Ct. 2004). After her release, A.P. filed a Motion to Set Aside Guilty Plea, and to Vacate Judgment, and to Dismiss for Lack of Subject Matter Jurisdiction in the Tuba City Family Court. Without a hearing, the Tuba City Family Court denied the motion, and instead issued an order excluding A.P. from the Navajo Nation. A.P. then filed a Petition for Writs of Prohibition, Mandamus, and Superintending Control with this Court.

In the second proceeding before this Court, we issued an alternative writ of superintending control, which stayed the exclusion order. We requested briefs from the Respondent Tuba City Family Court and Real Party in Interest Navajo Nation. The Navajo Nation did not file a response. We held oral argument on April 20, 2005, and now issue our decision.

## II

The issues in this case are 1) whether there is an adequate appellate remedy barring a writ in this case, 2) whether the Navajo Nation has jurisdiction to adjudicate a non-Indian child in a delinquency proceeding, and 3) if jurisdiction is proper, whether a hearing is required before a court may exclude a non-Indian child.

## III

A.P.'s petition requests one or more of several types of writs, including writs of prohibition, mandamus, and superintending control. We have jurisdiction

to issue "any writs . . . [n]ecessary and proper to the complete exercise of [our] jurisdiction." 7 N.N.C. § 303(A) (as amended by Navajo Nation Council Resolution No. CO-72-03 (October 24, 2003)). A writ is not a substitute for appeal, as this Court will issue a writ only if there is no plain, speedy and adequate remedy at law. *Yellowhorse, Inc. v. Window Rock District Court*, 5 Nav. R. 85, 87 (Nav. Sup. Ct. 1986). This Court may issue a writ of prohibition when a court lacks jurisdiction to proceed in a case. *Peabody Western Coal Co. v. Navajo Nation Labor Commission*, 8 Nav. R. 488, 490 (Nav. Sup. Ct. 2004); *Cabinets Southwest, Inc. v. Navajo Nation Labor Commission*, 8 Nav. R. 453, 446 (Nav. Sup. Ct. 2004). We may issue a writ of mandamus against a court to compel a judge to perform a judicial duty required by law. *Duncan v. Shiprock District Court*, 8 Nav. R. 581, 587 (Nav. Sup. Ct. 2004). The petitioner must show that (1) he or she has a legal right to have the particular act performed; (2) the judge has a legal duty to perform that act; and (3) the judge failed or neglected to perform the act. *Id.* While not previously defined in our cases, we may issue a writ of superintending control when a court otherwise abuses its discretion in such an egregious way that only immediate action by this Court will remedy the damage done to a party. In this case, we initially issued an alternative writ of superintending control. However, in reviewing the case, we consider all three writs to decide whether the Tuba City Family Court should be barred from moving forward in this case.

Respondent Tuba City Family Court initially argues that a writ is improper in this case, as A.P. has an adequate remedy through a regular appeal to this Court. We disagree. Exclusion is a severe remedy, as it prohibits the party from ever entering the Navajo Nation again. As such, its effects are immediate and serious. While that in itself does not justify an immediate remedy, the issues in this case also concern the jurisdiction of the Navajo Nation over a non-Indian child, as well as the procedures necessary to exclude a non-Indian child from the Nation. As issues of significant impact throughout the Navajo Nation, as well as to A.P. and her family, we use our writ authority to immediately review the decision of the Tuba City Family Court.

## IV

The next issue is a threshold one: whether the Navajo Nation has jurisdiction to ever hear a delinquency case against a non-Indian child. We asked the parties at oral argument whether general principles of federal Indian law or Navajo Nation statutory law prohibit the Nation from adjudicating a non-Indian child in a delinquency proceeding. Both parties stated that the Nation could do so in certain circumstances. As the issue is one of subject matter jurisdiction, however, we consider it despite the agreement between the parties.

## A

We first must consider the issue under general principles of federal Indian law because of the interaction of our Treaty of 1868 with the United States Supreme

Court's case law on tribal jurisdiction over non-Indians. The Treaty of 1868 with the United States recognizes broad civil and criminal powers over all who enter the Navajo Nation. *See Dale Nicholson Trust v. Chavez*, 8 Nav. R. 417, 428–29 (Nav. Sup. Ct. 2004) (recognizing complete civil jurisdiction over non-Indians, including state officials, on tribal lands); *Means v. District Court of Chinle Judicial District*, 7 Nav. R. 382, 391 (Nav. Sup. Ct. 1999) (recognizing criminal jurisdiction over non-member Indians under Treaty). However, the United States Supreme Court has recognized severe limitations on "inherent" tribal authority over non-Indians. It has held that Indian tribes generally have no criminal jurisdiction over non-Indians, because such power is allegedly "inconsistent" with the "dependent status" of tribes. *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 208-09 (1978). Similarly, the U.S. Court has adopted a narrow view of civil jurisdiction that requires, in certain circumstances, fulfillment of one of the exceptions in *Montana v. United States*, 450 U.S. 544, 565-66 (1981), to justify the Nation's authority over non-Indians, even on tribal lands. *Nevada v. Hicks*, 533 U.S. 353, 358-59 (2001).[1]

Despite the general prohibitions recognized by the U.S. Supreme Court, we have recognized authority under the Treaty above and beyond "inherent" tribal authority. We have recognized broad civil authority over non-Indians on tribal lands, holding that the exclusion provision of our Treaty allows for civil jurisdiction regardless of *Hicks. Dale Nicholson Trust*, 8 Nav. R.417, 428–29. We similarly have recognized criminal jurisdiction over a non-member Indian regardless of the Supreme Court's prohibition in *Duro v. Reina*, 495 U.S. 676 (1990).[2] *Means*, 7 Nav. R. at 391. We have never considered whether we have broad criminal authority over non-Indians regardless of *Oliphant*. Whether we need to reach that issue depends on whether a delinquency proceeding is "civil" or "criminal" in nature.

We believe delinquency jurisdiction over non-Indians, as long as detention is not allowed, is civil in nature, and therefore within the jurisdiction of our courts. Our Children's Code, like those of states, classifies juvenile proceedings as civil. 9 N.N.C. § 1157 (1995); *In re A.W.*, 6 Nav. R.38, 41 (Nav. Sup. Ct. 1989). That classification, without more, does not mean it is truly "civil" in nature. In cases where states have claimed that the "civil" nature of juvenile proceedings allows them to provide less than full protections available in criminal cases, the U.S.

---

[1] We have interpreted the discussion in *Hicks* to apply *Montana* on tribal lands only when a tribe attempts to regulate the activities of state officials through its "inherent" authority. *Nelson v. Pfizer*, 8 Nav. R. 369, 377 (Nav. Sup. Ct. 2003).

[2] Congress subsequently reaffirmed the "inherent" jurisdiction of tribes over non-member Indians through the so-called *Duro* fix. *See* 25 U.S.C. § 1701(2). The U.S. Supreme Court upheld this reaffirmation in *United States v. Lara*, 541 U.S. 193 (2004). There remains a question whether the *Duro* fix otherwise violates equal protection or due process under the Bill of Rights. *See Id.* at 209. Our Treaty analysis in *Means* transcends these considerations, as we assert criminal jurisdiction over non-member Indians regardless of any limitation on our "inherent" jurisdiction.

Supreme Court looked beyond the civil label, and examined the essential nature of the proceeding. *See Breed v. Jones*, 421 U.S. 519 (1975); *In re Winship*, 397 U.S. 358 (1970); *In re Gault*, 387 U.S. 1 (1967). Central to the Court's analysis was the availability of detention as a possible disposition of the child. *See Gault*, 387 U.S. at 36 ("Civil labels and good intentions do not themselves obviate the need for criminal due process safeguards ... [W]here ... the child will be ... subjected to the loss of his [or her] liberty for years [, it] is comparable in seriousness to a felony prosecution"). In these cases, the Court rejected the "civil" label, holding that the possibility of detention rendered the juvenile proceeding essentially "criminal" for purposes of defining the juvenile's rights. *See Id.* at 36, 41, 50 (rights to notice of charges, confrontation, cross-examination, and privilege against self-incrimination); *Breed*, 421 U.S. at 529-31 (double jeopardy); *Winship*, 397 U.S. at 366-67 (reasonable doubt standard of proof).

Though not directly on point, this approach is appropriate to define tribal jurisdiction over non-Indian children. In juvenile cases, the "criminal" nature of the proceeding arises out of the possibility of detention, the functional equivalent of adult incarceration, as the child's liberty is taken away. As we prohibited detention for A.P. as beyond the authority of the Tuba City Family Court in our previous Order of Release, the current proceeding is "civil" in nature. Under general principles of federal Indian law, as interpreted by this Court, we hold that the Navajo Nation has civil jurisdiction to adjudicate non-Indian children in a delinquency proceeding for activity on tribal lands, as long as detention is not a possible disposition.

## B

Though principles of federal Indian law do not prohibit the Nation's delinquency jurisdiction over non-Indian children, the Navajo Nation Council may still bar such jurisdiction. The Children's Code establishes family court exclusive jurisdiction over "all proceedings ... in which a child is alleged to be ... a delinquent child." 9 N.N.C. §1055(B) (1995). The term "child" is defined as "an enrolled member of the Navajo Nation or one who is eligible for enrollment with the Navajo Nation, *or any other person who is subject to the jurisdiction of the Navajo Nation and is under the age of eighteen (18) years.*" 9 N.N.C. §1001(F) (1995) (emphasis added). Under these provisions, the Children's Code does not prohibit jurisdiction over non-Indian children, but such jurisdiction is co-extensive with the Nation's general authority, presumably as established by the Treaty and general principles of federal Indian law discussed above. Therefore, we hold that under Navajo statutory law, family courts generally have delinquency jurisdiction over non-Indian children.

The final question is whether the specific curfew provision in the Navajo Nation Criminal Code prohibits such jurisdiction. Unlike the Children's Code, the curfew statute distinguishes Indian children from non-Indian children. Under a subsection entitled "Sentence," an Indian child committing a curfew

violation "shall be deemed to have committed a delinquent act and may be deemed a delinquent child pursuant to 9 N.N.C. § 1001 *et seq.*" 17 N.N.C. § 531 (D)(2) (as amended by Navajo Nation Council Resolution No. CJA-08-00 (January 27, 2000)). A non-Indian child, on the other hand, "may be excluded from the territorial jurisdiction of the Navajo Nation pursuant to 17 NNC § 1901 *et seq.*, or be ordered to pay a civil penalty not to exceed $500 or both." 17 N.N.C. § 531(D)(3) (as amended by Navajo Nation Council Resolution No. CJA-08-00 (January 27, 2000)).

When reconciled with the Children's Code, the distinction between Indian and non-Indian children concerns the type of remedy available to a family court and not to the type of proceeding the court may hold. One possible interpretation of the provision is that a family court cannot find a non-Indian child delinquent, but must hear the case as an exclusion proceeding brought under Section 1901 of Title 17. However, this provision is entitled "Sentence" and we could interpret it merely to distinguish the type of remedy a family court may order when Indian and non-Indian children commit a curfew violation. This latter construction harmonizes the provisions in the Children's Code and Criminal Code, as there appears to be no reason why a non-Indian curfew violator should be treated differently than any other non-Indian child in terms of the type of proceeding necessary to remedy their offense. Further, it avoids potentially troubling procedural inconsistencies between Indian and non-Indian curfew violators, including the difference in burdens of proof between delinquency proceedings (reasonable doubt, 9 N.N.C. § 1115(E) (1995)) and exclusion proceedings (preponderance of the evidence, 17 N.N.C. § 1901(C)(2) (as amended by Navajo Nation Council Resolution No. CJA-08-00 (January 27, 2000)). Again, absent some compelling reason for the distinction, the lower burden of proof for a non-Indian child might violate the non-Indian child's right to equal protection under the Navajo Bill of Rights. *See* 1 N.N.C. § 3 (1995). We therefore hold that exclusion of a non-Indian child is not an independent proceeding, but is a possible disposition after the facts have been established in a delinquency proceeding.

## IV

As the Tuba City Family Court had jurisdiction to hear the delinquency proceeding, the only remaining issue is whether it otherwise violated A.P.'s rights when it issued its exclusion order. At oral argument, counsel for the Family Court conceded that due process was not followed in issuing the exclusion order without a hearing. That is enough to justify a permanent writ. The Children's Code and the Navajo Children's Code Rules of Procedure require that a family court hold a dispositional hearing. 9 N.N.C. § 1116(E), (G) (1995); Rule 9(8), Navajo Children's Code Rules of Procedure. Those requirements must be carefully followed. *In re A. W.*, 6 Nav. R. 38, 43 (Nav. Sup. Ct. 1988). Further, even in the absence of a clear directive in the Code, our Navajo concept of due process emphasizes the right to be heard consistent with *k'é, see Fort Defiance*

*Housing Corp. v. Lowe*, 8 Nav. R. 463, 475 (Nav. Sup. Ct. 2004), and the importance of the community "talking things out" to resolve disputes, *see Navajo Nation v. Crockett*, 7 Nav. R. 237, 241 (Nav. Sup. Ct. 1996) ("To avoid disruptions of relationships, Navajo common law mandates that controversies and arguments be resolved by 'talking things out'."). Children in Navajo society have the same right to due process as adults. *In re A. W.*, 6 Nav. R. at 43. That the child is a non-Indian does not lessen the protections the court must afford her. *See Sells v. Espil*, 6 Nav. R. 195, 198-200 (applying Navajo due process to non-Indian in personal jurisdiction analysis); *Billie v. Abbott*, 6 Nav. R. 65, 74 (Nav. Sup. Ct. 1988) (same). We therefore hold that a non-Indian child must have a dispositional hearing before the court may exclude him or her.[3] As no hearing was held, the family court violated A.P.'s due process rights, and we must bar it from excluding her from the Navajo Nation.

### V

Based on the above, we issue a permanent writ of mandamus, as the Tuba City Family Court has a legal duty to provide a dispositional hearing before ordering exclusion. As set out in the writ, the exclusion order issued in this case is VACATED. Based on the above discussion, the delinquency proceeding itself remains intact. The Tuba City Family Court may hold a hearing after notice to the parties to consider exclusion or fine as the disposition of this case. Pending the hearing, A.P. may re-file any motion to dismiss with the Tuba City Family Court not inconsistent with the principles announced in this case.

---

3 As a hearing has not yet been held, we do not comment on what factors the family court must consider before it may exclude a child.