OPINION

This petition for writ of mandamus involves the question of whether the Navajo Nation Labor Commission (Commission) should have recused the entire sitting panel and all former members of the Commission from hearing Petitioner Evelyn Meadows’ employment complaint under the Navajo Preference in Employment Act (NPEA) on the basis of a prior professional relationship, namely, that Petitioner had served previously as a Labor Commission Commissioner. For the below reasons, we grant the writ of mandamus.
*53 I
On November 8, 2011, Petitioner filed a labor complaint before the Commission alleging that Real Party in Interest Diñé College (RPI) violated the NPEA by (1) retaliating against her, (2) creating a hostile work environment, and (3) inflicting emotional distress after she testified before the Commission in a separate matter that resulted in sanctions against RPI. The same day, Petitioner also filed a motion for preliminary injunction to prevent continuing NPEA violations and further retaliation pending the proceedings. At the time, Petitionér was the Human Resources Director of Diñé College. After testifying against RPI, Petitioner and her staff were immediately placed under the supervision of the RPI President. At a December 1, 2011 hearing on Petitioner’s motion for preliminary injunction, RPI orally moved for the Commission’s recusal after the Commission members disclosed that Petitioner was a former member of the Commission. Following argument on the motion, the Commission issued an Order Dismissing Motion for Preliminary Injunction.[1] The Commission stated that “although each of the Commission members declared that despite their prior professional association with the Petitioner, they all believed that they could be fair and impartial,” nevertheless “the Respondents believed that there was a conflict of interest and an appearance of impropriety for the current panel to rule in this matter.” Order, supra ¶ 2. The Commission also noted that all four former Commission members are “subject to recusal based on the same grounds cited by [Diñé College].” Id. ¶ 3. The Commission then granted the recusal motion on the ground that “a panel of Commissioners cannot be convened to hear this matter based [on] the appearance of impropriety due to their prior professional association with the Petitioner.” Id. p. 2. The Commission then dismissed Petitioner’s complaint and advised Petitioner that she “may file her claim in the district court of the Navajo Nation.” Id. The Commission made no other relevant findings.
On December 15, 2011, Petitioner filed for a writ of mandamus, asking this Court to set aside the Commission’s decision on the basis that the decision was baseless, and Petitioner had been provided no opportunity to rebut the evidence because there was no evidence offered. Petitioner further claimed that filing a NPEA complaint in district court is both not an option due to the strictures of the Navajo Sovereign Immunity Act, and because the Commission has a statutory duty to hear NPEA claims pursuant to 15 N.N.C. § 601 et seq. On January 26, 2012, this Court granted an alternative writ and invited the Navajo Department of Justice to file an amicus brief. On February 8, 2012, RPI filed two motions to dismiss the writ action for mootness on grounds that RPI had since terminated Petitioner’s employment. The Court denied both motions.
Briefs were timely filed by Respondent Commission, RPI and amicus Navajo Nation, The Court now issues this decision based on the record, having determined oral argument to be unnecessary.
II
This Court may issue extraordinary writs to lower tribunals as part of its supervisory authority. See 7 N.N.C. § 302. The Court has limited the direction of its original writs to trial courts and tribunals identified as “courts” for purposes of 7 N.N.C. § 303, and has ruled the Commis *54 sion to be such a court. Office of the President and Vice-President et al v. Navajo Nation Board of Election Supervisors et al., 9 Am. Tribal Law 346, 347-48 (Nav.Sup.Ct.2010).
A writ of mandamus may issue to compel a tribunal to perform a non-discretionary legal duty. See, e.g., In re A.P., 8 Nav. R. 671, 678, 6 Am. Tribal Law 660 (Nav.Sup.Ct.2005). To warrant the writ, the petitioner must demonstrate “that (1) he or she has a legal right to have the particular act performed; (2) the [decision maker] has a legal duty to perform the act; and (3) the [decision maker] failed or neglected to perform that act.” Id. (internal citations omitted).
Ill
Whether the Commission even has the discretion of recusal under the scope of its statutory authority and promulgated rules and regulations is the threshold question. The Navajo Nation Council has granted the Commission the independent authority to “[fjormulate overall administrative and operating policies pertaining to the function of the Commission.” 15 N.N.C. § 304(B). Pursuant to 15 N.N.C. § 616, the Commission has the delegated authority “to adopt and implement, on its own initiative and without any approval, rules of procedure and practice governing the conduct of proceedings under § 611 of the Act, provided that such rules are consistent with the provisions of the Act.” That being said, the Commission may not act outside the scope of its statutory authority and duly promulgated rules. Unlike our courts which under 7 N.N.C. § 255 have broad discretion “to issue any writs or orders necessary and proper to the complete exercise of their jurisdiction,” the Commission’s discretion is limited to existing statutes and rules. See Nelson v. Initiative Committee to Reduce Navajo Nation Council et al., 8 Am. Tribal Law 407, 415 (Nav.Sup.Ct.2010), (an administrative tribunal’s authority “is limited to the statutory scope of its authority and its promulgated hearing rules and regulations.”) This Court having reviewed the submitted briefs takes note that all parties are in agreement that no authority pursuant to statutes or formal rules or policies presently exists that permits the Commission to recuse itself entirely or its members.
In its brief, the Commission asks this Court to allow it to borrow Canon Eleven of the Code of Judicial Conduct (CJC) which sets forth conditions and standards for judicial recusals. We decline to do so for the following reasons. The Commission has had ample opportunity for decades to promulgate rules stating the conditions under which panel members may or must be recused, as well as the standards under which recusals may be granted, and has not done so. Even if this Court were to allow the CJC to be used, we lack the power to permit retroactive application. An additional concern is the propriety of applying policies governing the conduct of a judge who decides a matter individually, as opposed to an administrative panel whose collective decision need not be unanimous. See 15 N.N.C. § 611(C)(3) (“The Commission shall issue its decision by a majority vote of a quorum”). An administrative panel is not like a court. Navajo Nation judges must be members of the Navajo Nation Bar Association (NNBA) and are held to specific NNBA professional standards and the CJC, while Commission members are appointed pursuant to 15 N.N.C. § 303(A) and (B) to represent certain segments of the People and need only be knowledgeable in labor practices and labor requirements of the Navajo Nation. Commission members receive a stipend only when impaneled and *55 otherwise engage freely in other occupations and community activities, while judges serve full-time, with the CJC limiting their involvement in certain community activities, including non-judiciary boards and organizations, due to the potential for an “appearance of impropriety.” See CJC, Canon 7. It would be improper to require a part-time administrative panel to maintain the stringent conduct standards to which full-time judges are held. We further note that the Courts of Appeals in our sister jurisdictions in the 2nd, 9th and 10th Circuits have expressly found that the “appearance of impropriety” standard for federal judges pursuant to the relevant federal statute is not applicable to administrative law judges due to its plain wording.[2] Likewise, the Navajo Nation judicial recusal provision found in the CJC, by its plain wording, is applicable only to the Navajo Nation Courts. See CJC, Application of the Cods (“The code applies to each judge and justice of the Navajo Nation courts”). Finally, the Commission is the only administrative body in the Navajo Nation before which a claimant may take NPEA-based claims. Recusal of the entire Commission would result in dismissal, as in this case, while a matter in which a judge is recused continues on before another judge in the same or another judicial district. As Petitioner has noted, in cases where the Navajo Nation is the employer, notice and other requirements of the Navajo Nation Sovereign Immunity Act are presumptively waived before the Commission, not so before our courts.
The Navajo Nation Council established the Commission in order to “[pjrocess and decide all formal complaints/petitions” brought under the comprehensive statutory scheme of the NPEA. 15 N.N.C. § 302(C) (emphasis added). The Commission is directed to “[hjear and adjudicate cases as the quasi-judicial hearing body under the [NPEA].” 15 N.N.C. § 302(A). The Council has not granted the Commission the ability to decide by its own authority that the Commission, as an entire body, will not hear a particular case under the NPEA once a claim is filed. The route taken by a claimant to the Commission is lengthy. Prior to the initiation of Commission proceedings, an individual asserting NPEA violations must first have filed an Individual Charge before the Office of Labor Relations (ONLR) within a set time limit. The ONLR conducts a probable cause assessment and may pursue settlement, press a claim on behalf of the individual or issue a “right to sue” letter for the claim to be brought by the individual before the Commission. 15 N.N.C. § 610. Irrespective of whether the ONLR has issued a notice of right to sue, made a probable cause determination, or commenced or concluded conciliation efforts, the individual has the right to file a claim before the Commission within 180 days of the filing of the charge. Id. Having engaged in the lengthy administrative process in reaching the Commission, a claimant is required to exhaust administrative remedies.
We have previously listed limited circumstances under which claimants may file an NPEA claim in district court without exhausting administrative remedies. In Charles v. Furniture Warehouse, 7 Nav. R. 92, 94 (Nav. Sup. Ct. 1994), we stated:
Exhaustion of administrative remedies is ... not required if the administrative remedy is inadequate, which includes an unreasonable delay, inability to come to *56 a decision, or lack of authority to grant the relief the party is entitled to. Also, exhaustion of administrative remedies is not required if irreparable injury is imminent or the agency is acting in excess of its authority. Thus, if the complainant alleges one of these exceptions, the complainant is not required to exhaust the agency’s remedies. When the complainant is not required to exhaust the agency’s remedies, he or she may file with a district court because those courts have general civil jurisdiction, which includes jurisdiction to hear claims raised under applicable federal laws. 7 N.T.C. §§ 204, 253 (1985).
Id. at 94 citing Navajo Skill Center v. Benally, 5 Nav. R. 93 (Nav. Sup. Ct. 1986).
Furniture Warehouse, supra, concerned a complaint alleging both NPEA violations and violations of federal statutes over which the Commission has no jurisdiction to provide remedies. Notwithstanding that inadequacy of administrative remedies is a listed exception, we required the ONLR and the Commission to determine the validity of such hybrid claims, because to permit persons with employment claims to “proceed directly to the courts would defeat one of the principle goals of the NPEA.” Id. We also considered judicial efficiency and economy in our already overburdened court system, and the need to prevent claimants from “concoct[ing] claims outside the NPEA, in an attempt to circumvent the administrative process.” Id.
We are aware that litigants in any forum may try to game the system, to the extent even of rendering a system unmanageable in order to frustrate efforts of the opposing side. Allegations of conflict of interest, as have been raised in this case, may not be used to circumvent the administrative process. It is incumbent on the officials in the system to be able to identify and counter such efforts in a fair manner through policies or rules of recusal. Again, unlike the judicial system, the administrative law-system is highly circumscribed by its promulgated rules, which must be established with care.
As public officials, Commission members have “a fiduciary responsibility to the Navajo people to execute the trust the People have placed with them.” See Thinn v. Navajo Generating Station, Salt River Project, 7 Am. Tribal Law 558, 563 (Nav.Sup.Ct.2007) citing Thompson v. Navajo Nation, 6 Nav. R. 181, 183-84 (Nav. Sup. Ct. 1990). As part of the government, the Commission works for and on behalf of the collective People in their role as naat’aanii. We have stated that the government
must protect all persons within the Nation, through, among other things, regulating the relationship between employers and employees. Through employment, the people, both employees and business owners, provide for themselves and their families, and such employment assists them in living a good life.
Id. at 564.
Managing its administrative law system in a manner that ensures both access and due process is the sacred duty placed by the Council upon the Commission. This duty involves both processing and deciding all formal complaints filed pursuant to the expected fiduciary standards, and ensuring that the necessary rules and policies are in place for Commission hearings. The Commission members as naat’aanii are protectors of the vital part of a good life that is employment, and are accountable to the People in their conduct thereof. Rules and policies of the Commission governing recusals must ensure transparent proceedings, within which the character and wisdom expected of *57 naat’aanii who are chosen as representatives of the People may be shown. In order to fulfill such expectations, strict adherence to applicable measures and due process as mandated by the NPEA and by the Navajo Nation Bill of Rights, must be observed. See, e.g., In re Removal of Katenay, 6 Nav. R. 81, 85 (Nav. Sup. Ct. 1989) (stating that a statutory scheme can be the source of due process rights); see also Bradley v. Lake Powell Medical Center, 7 Am. Tribal Law 500, 504 (Nav.Sup.Ct.2007) (stating that “under the public policy of the Navajo Nation, employment is a valuable property right” which may not be deprived under our bill of rights without due process of law.) In this case, dismissal had been granted on the basis of nothing more than an expressed concern that a professional association may have the appearance of a conflict of interest. When it did so, the Commission fell well short of all measures applicable to its decision-making as an administrative body and failed to meet the expectation of the People as to how naat’aanii must perform.
It is well-established that a decision of an agency must be supported by “substantial evidence.” Silentman v. Pittsburg and Midway Coal Mining Company, 8 Nav. R. 306, 311-12, 4 Am. Tribal Law 644 (Nav.Sup.Ct.2003). “Supported by substantial evidence” means “relevant evidence which a reasonable mind could accept as adequate to support the conclusion, even if it is possible to draw two inconsistent conclusions from the evidence.” Id. at 312, 7 Am. Tribal Law 500. (internal citations omitted). Additionally, the Navajo people have an established custom of notifying all involved parties in a controversy and allowing them, and even other interested parties, an opportunity to present and defend their positions. Begay v. The Navajo Nation, et al., 6 Nav. R. 20, 24 (Nav. Sup. Ct. 1988). When a determination that a conflict exists is made without requiring the movant to present evidence and without giving the opposing side the opportunity to present her evidence in defense, the substantial evidence rule has been violated. The system has failed.
As we have noted, the discretion of an administrative body is limited to the express provisions of statutes, rules and regulations. Recusals must be pursuant to duly established provisions. For example, the Social Security Administration provides for disqualification of its administrative law judges pursuant to a federal statute, 20 C.F.R. 404.940, requiring withdrawal “if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision.” It has been established in our sister jurisdiction, the 9th Circuit, that this provision requires a showing of actual bias, and that to require withdrawal due to mere appearance of impropriety may render the administrative lawr system unworkable due to the employment ties between the administrative tribunal and the agency whose action they review.[3] In this case, Commission members are appointed by, and receive stipends from the Navajo Nation which, through its divisions, departments and programs, frequently appears as a party before them. It is clear that an “appearance of impropriety” standard would neither serve the Commission system and the People, nor comply with the substantial evidence rule. Additionally, it is our view that the substantial evidence rule applicable to all decisions of our administrative tribunals would require a showing by relevant, adequate evidence *58 that actual bias exists, not merely an expression of concern that impropriety or a conflict may exist, which is the low showing required under an appearance of impropriety standard.
It bears repeating that under Fundamental Law, naat’aanii do not ever lay down the People’s trust. When faced with a leader is taught that he/she must find the solution, for it is always available. Thinn at 564. In short, any rule or policy for recusal established by the Commission may not serve to disqualify an entire administrative panel and may never serve to deny a litigant to access the Commission.
Naat’aanii inliigo ei t’aa nantl’a doo t’aa nahontl’ala, haala lahgoo t’aa nistl’a, dahwiizt’i’ akondi, Dine Bibee-haz’aanii doo hane’ binahji’ baantsa-hakeeso ei choo’iil doo hasih ntsahakee-sigii beego ei t’aa bik’ee’aam hodeezt’i’ doo ch’idahwiizt’i’, doo inda bikaa haa-dahwiizt’i’. Diyin Dine’e Ts’aa’ hadeii-diilaaigii ei t’aa akot’eigo yil hadadeii-diilaala; yah’ahoot’i’, alheehonit’i’ doo ch’eehonit’i’, doo ei t’oo dadesstl’oo da. Binahji’ ei t’aa hat’eigi shii hanahat’a’ bee nistl’ajiyaago, hanahat’a’ bee ha-zhdinoodzii’ doo ajisiihgoda ei doo ha-nahat’a’ doo habeehaz’aanii doo t’oo ni’ nizhdooleelda, hatsodizin doo haane’ ei bee bika,a’ haazhdoodaal doo bee nistl’ahazt’i’ee bee hozhoogo bik’idiyaa nizhdooleel doo bi’aazh doo gaal. Id. As explained above, and as demonstrated in the design of the sacred wedding basket, a leader through adherence to the laws, the analysis of the stories of the Dine journey, and a positive approach will find a solution (bi a’iidza) around, through, or over that which confronts the people.
Id, In this manner, the Commission shall approach the promulgation of policies or rules regarding conflicts of interest.
We take judicial notice that unlike judges, Commission members take no solemn oaths nor affirmations when appointed to serve on the panel. For purposes of ensuring the integrity of its members, the Commission should consider instituting such an oath for its current and future commissioners.
The Court finds that the Commission has no authority to recuse itself until rules or policies are established that govern how recusals for commissioners should occur. The Commission, as an institution, has a mandatory statutory duty to be the primary forum for NPEA claims. When promulgated, the rules or policies pertaining to recusal may not be applied midstream to a pending dispute, but may be used for future application, and in no event may recusal result in disqualification of the entire Commission as a hearing body. We emphasize that the individual members of the Commission, as naat’aanii, have a non-discretionary duty to fulfill their responsibilities to the public, who have an expectation that naat’áannii must rise above personal feelings and relationships in order to fulfill their role.
It is the finding of this Court that the Petitioner has a legal right to have her claim heard before the Commission, the Commission is legally bound to hear her claim, and the Commission has failed to hear the claim. The elements set forth In the Matter of A.P., supra, having been satisfied, we find that a writ is warranted.
In closing, we note that Petitioner has requested costs and fees for having to initiate this action. RPI having needlessly prompted the recusal and Petitioner having prevailed in her request for a writ, the Court hereby awards Petitioner reasonable attorney’s fees and costs. Petitioner shall file her itemized statements within 20 days of receipt of this decision and RPI will be given an opportunity to *59 respond within 10 days of Petitioner’s filing of said statements. The Court encourages the parties to stipulate to final costs and fees. Additionally, RPI has asked the Court to seal the record concerning the grounds for Petitioner’s termination. Given our decision to grant the writ, the Court need not rule on RPI’s request to seal the record. We would note that generally, court actions are public records. Additionally, RPI is a public institution whose decisions are normally intended to be transparent.
IV
The Petitioner having demonstrated the required grounds for issuance of a writ and the Commission having erred by ordering the recusal of the panel and all previous members without authority, the Court GRANTS a writ of mandamus.
The Commission’s Order Dismissing Motion for Preliminary Injunction is hereby VACATED. Petitioner’s complaint is REINSTATED. The matter is REMANDED for the Commission to hear the merits of Petitioner’s case.
The Commission is further ORDERED forthwith to promulgate rules and policies for recusals consistent with this opinion as they are authorized pursuant to 15 N.N.C. §§ 304(B) and (C) and 616, such rules and policies to be applicable to matters not presently pending before the Commission.

. We note that the Commission’s order was mistakenly named, as it dismissed the entire complaint, not only the motion for preliminary injunction.

. See Greenberg v. Bd. of Governors of Fed. Reserve Sys., 968 F.2d 164, 166-67 (2d Cir.1992); Harline v. Drug Enforcement Admin., 148 F.3d 1199, 1204 (10th Cir.1998); Bunnell v. Barnhart, 336 F.3d 1112, 1114 (9th Cir.2003).

. Bunnell v. Barnhart, supra at 1114 citing Greenberg v. Bd. of Governors of Fed. Reserve Sys., supra at 166-167.