OPINION

Appellants Jackie Yazzie, Jr., Hunters Point School Board President, and Hunters Point Boarding School, Inc., appeal from a December 7, 2012 decision of the Office of Hearings and Appeals (OHA) reversing the Navajo Election Administration (NEA)’s July 2, 2012 forfeiture and declaration of vacancy of Appellants’ positions as school board members due to their having missed three (3) consecutive school board meetings. For the reasons set forth below, we reverse the OHA’s decision.[1]
I
The below facts are undisputed. Appellant Yazzie and Appellees Wauneka and Bia-Kirk all served on the four-member 2012 school board of Hunters Point Boarding School (HPBS). During the course of the year, disputes arose among the members regarding renewal of contracts of the entire HPBS teachers and staff, and at the request of the Department of Dine Education (DODE) liaison, the issue was placed on the agenda of a May 9, 2012 school board meeting that had been rescheduled from May 8, 2012. Appellant Yazzie and a fourth board member attended, but Appellees both did not attend in spite of due notice. According to the school board’s by-laws, a legal quorum of at least 3 members is necessary in order to conduct school board business. Lacking a quorum, the meeting was again rescheduled to May 11, 2012, then to May 16, 2012 and after that to May 23, 2012, with the same result of no quorum due to Appel-lees’ non-attendance without informing the other board members that they would be absent. Due to the lack of quorum at all of the four rescheduled meetings, school board business was unable to be conducted, including the renewal or non-renewal of HPBS employment contracts.
On May 31, 2012, the DODE amended an existing corrective action plan to include removal of Appellees for non-attendance at meetings. On June 29, 2012, the DODE convened a due process hearing. The DODE subsequently assumed control of the school board until such time as the board would be able to function and conduct business.
Also on May 31, 2012, Appellant Yazzie filed a notarized statement with the NEA certifying that Appellees had failed to attend three consecutive school board meetings which, pursuant to 11 N.N.C. § 142(A), would result in the automatic forfeiture of their positions by operation of law. On July 2, 2012, the NEA served a notice of automatic forfeiture on Appellees, and further served a declaration of vacancy on Appellees, chapter officials and school board that outlined the nomination and appointment process to fill the forfeited positions. Appellees Bia-Kirk and Wauneka subsequently filed election grievances to the OHA within ten days. Shortly thereafter, upon motion by Appellees, the OHA stayed the forfeiture and halted all appointment actions pending final disposition of Appellees’ grievances. However, as a practical matter the school board, as a body, ceased to operate and conduct business for more than five months that followed while the matter was litigated. *157 Additionally, we take judicial notice that while the forfeiture proceedings were stayed by the OHA, both Appellees stood for reelection to their school board positions in the November 6, 2012 general elections, and prevailed.
After several continuances, an evidentia-ry hearing was held by the OHA on October 22, 2012 at which testimony and argument from all parties were heard. On December 7, 2012, the OHA issued a Findings of Fact, Conclusions of Law and Final Order reversing the NEA’s notice of forfeiture and declaration of vacancy on the basis that a legal quorum of the school board did not invoke the forfeiture provision and “two board members cannot unilaterally forfeit another board member’s position without a legal quorum.” Findings of Fact, Conclusions of Law and Final Order, p. 7. The OHA further found that Appellee Wauneka claimed to have a dentist appointment on May 9, 2012 at 6 p.m., and that both the Appellees were aware of and received due notice of the non-attended meetings. Id, pp. 3-4. A review of the record shows that the May 9, 2012 meeting was scheduled at 2 p.m. while the dentist appointment took place at 6 p.m.
On December 13, 2012, Appellants Yaz-zie and HPBS filed a Notice of Appeal. On December 27, 2012, the Court ordered briefs to be filed on an expedited schedule on three legal questions concerning the interpretation, application, and conse-quenees of forfeiture pursuant to 11 N.N.C. § 142. The Court also invited a brief from the NEA. Briefs were duly received from Appellants and the NEA. The submitted record on appeal included audio tapes, which the Court accepted in lieu of the written transcript because of the expedited handling of this case.
II
The issues in this case are (1) whether a quorum is required to invoke forfeiture under 11 N.N.C. § 142; (2) how 11 N.N.C. § 142 requires forfeiture to be handled; and (3) what are the legal consequences of forfeiture.
III
The Court will apply a de novo standard of review of legal interpretations by lower courts or administrative agencies. See Begay v. Navajo Nation Election. Administration, 8 Nav. R. 241, 250, 4 Am. Tribal Law 604 (Nav.Sup.Ct.2002).
IV
The issues in this appeal involve legal interpretations of provisions of the Navajo Nation’s election laws, specifically, those laws that govern the procedures and consequences for forfeiture and removal of school board members. Of concern to this Court is the OHA’s reasoning that a quorum of the school board is needed in order to invoke forfeiture pursuant to 11 N.N.C. § 142(A), and the OHA’s delay of as much as five months in issuing a decision on Appellees’ filed grievances, during which the forfeiture and appointment process was halted by the OHA’s order to stay. For the reasons below, this Court finds that the OHA’s reasoning that a quorum is needed has no basis in the law, nor is any statutory authority provided to the OHA either to delay a decision in an election grievance beyond the timelines set forth at 11 N.N.C. § 341, nor to stay all N.N.C. § 142 automatic forfeiture after certification with the proper attachments.
The Court looks first to the plain meaning of a statute. If the statutory language is ambiguous, we then examine the statute’s legislative history to understand the statute’s overall objective. DU- *158 con v. Jensen, 8 Nav. R. 28, 36, 2 Am. Tribal Law 502 (Nav.Sup.Ct.2000) citing Navajo Nation Division of Resources v. Spencer, 5 Nav. R. 109, 111 (Nav.Sup.Ct. 1986).
11 N.N.C. § 142 (forfeiture provision), enacted by the Navajo Nation Council’s passage of Resolution CO-39-07 (October 17, 2007) provides in its entirety:
A. Navajo local community school board members who fail, without just cause, to attend three consecutive school board meetings, regardless of whether such meetings are regular- or special meetings, shall be deemed to have abandoned their office and such office shall be automatically forfeited, by operation of law.
B. A notarized document certifying the failure of a Navajo local community school board member to attend three consecutive school board meetings shall be filed with the Navajo Election Administration. This written document shall be signed before a notary public by any other member of the same Navajo local community school board, and shall be accompanied by copies of the written notices of the Navajo local community school board meetings not attended. The Navajo Election Administration shall send copies of these documents by first class mail to the Navajo local community school board against whom the forfeiture is imposed along with a notice of the forfeiture, and notice of the right of the Navajo local community school board member to file an election grievance relative to the forfeiture.
C. Upon the filing of the documents referenced in subsection (B), the Navajo Election Administration shall immediately declare a vacancy in the forfeited office of the Navajo local community school board.
D.The vacancy in the office of the Navajo local community school board created by the automatic forfeiture shall be filled in the manner set forth within the Navajo Election Code.
It must first be noted that when the forfeiture provision was enacted, the existing provision for removal of elected officials, including school board members, at 11 N.N.C. § 240 provided for an opportunity to be heard prior to removal and also placed the burden of showing just cause on the NEA. Specific to school board members, Section 240(D) mandated that the NEA “shall, upon notice and opportunity for response, remove school board members no longer possessing the necessary qualifications for office.” However, the forfeiture provision provides for no opportunity for response prior to automatic forfeiture. Upon the testimony of a school board member, submitted to the NEA via a written certification, that a member has not attended three consecutive regular or special meetings without just cause, the derelict member is deemed to have abandoned the position and the vacancy is to be filled. Forfeiture is tantamount to removal. While 11 N.N.C. § 204(D) and § 142 are apparently in conflict regarding due process measures that are required prior to removal of a school board member, nevertheless 11 N.N.C. § 142 is the later enacted provision and addresses a specific kind of dereliction of duty of an elected official. In Bennett v. Navajo Board of Election Supervisors, we stated:
The question of conflicting enactments of a legislature is one of statutory construction, and the actual question posed is whether the Navajo Nation Council *159 intended one law to prevail over another.
Bennett, 6 Nav. R. 319, 823 (Nav.Sup.Ct.1990).
The Council’s intent is found in the preamble to Resolution CO-39-07 and the minutes of the October 17, 2007 Council session which discussed enactment of the forfeiture provision.
It is evident from these documents that chronic absenteeism of school board members, resulting in no quorum to conduct school business, was deemed a major threat to the well-being of Navajo children and the Council intended to deal with it with great urgency. The preamble of CO-39-07 states that the intent of 11 N.N.C. § 142 was to prevent “severe negative effects on the management of Navajo local community schools” caused by “lack of attendance at regular and special school board meetings by [board members].” Appellants’ Brief, Exhibit A, p. 10 (CO-39-07, Section 1, “Findings”). The October 17, 2007 Council discussion frequently focused on sustained school board dysfunction when “representation of our children is not happening,” and the resulting ill effects on the education and best interest of Navajo children about whom the Council was “deeply concerned.” Id, pp. 13-17. Specifically, the Council discussed how chronic non-attendance results in inability of the school board to pass motions or otherwise conduct business. See id., p. 13-14 (Remarks of sponsor Willie Tracey, Jr. and Lorena Zah-Bahe at the October 17, 2007 Council session). Automatic forfeiture would address any member who “misses meetings without calling in, -without knowing their whereabouts for three meetings consecutively ...” Id. (Remarks of sponsor Willie Tracey, Jr.). It is evident from this legislative history that the Council wished to ensure a stable quorum without any delay in order to ensure there is a functioning school board to manage the day-to-day matters that impact the education of our children. Id, p. 13. This Court finds that the Council intended the general school board member removal provision at 11 N.N.C. § 240(D) to provide a member with an opportunity to respond to allegations of disqualification prior to a final decision on removal, but also clearly intended that 11 N.N.C. § 142 provide an expedited mechanism specifically for school board member removal for chronic non-attendance in order to expedite a functioning board.
As the legislative history shows that the lack of quorum caused by absenteeism is precisely the problem that the Council intended to fix, we further find that the OHA’s reasoning that a quorum is required to invoke forfeiture is clearly in error. A requirement for quorum would mean that the derelict members’ own vote would be needed to bring about their forfeiture, which is an absurd result not intended by the Council.
It bears reminding that elected officials of the Navajo Nation must represent the interests of their constituents and the communities from which they are elected and must fulfill all obligations of the office they assume.
The best definition of “just cause” under the circumstances is provided by the online Free Dictionary by Far-lex, Legal Dictionary, namely, “[a] reasonable and lawful ground for action. Appearing in statutes, contracts, and court decisions, the term just cause refers to a standard of reasonableness used to evaluate a person’s actions in a given set of circumstances.” According to the comments of the legislation’s sponsor, the problem conduct concerns when a school board member “misses meetings without calling in, without [the rest of the school *160 board] knowing their whereabouts for three meetings consecutively ...” Appellants' Brief, Exhibit A P- 13 (Remarks of sponsor Willie Tracey, Jr.). The comments of the legislature shows that the just cause excuse provided for non-attendance must be reasonable and timely given. Timely notice of a reasonable explanation, in all but the most critical circumstances, would furthermore, enable other school board members made aware of the intended non-attendance to be able to reschedule before wasting their time for lack of quorum. The purpose of active school board members who are working to fulfill their duty “to represent the children” must not be frustrated. Id.
“By operation of law” is a legal phrase with very specific intent. It creates immediate legal consequences when an event occurs without the need for further determination by any court or administrative body. For example, on the Navajo Nation, a minor obtains the privileges and responsibilities of an adult by operation of law upon the occurrence of his or her eighteenth birthday without any finding needed that the minor has, in fact, attained the required age. In this case, the plain and unambiguous language of 11 N.N.C. § 142(A) provides for “automatic” forfeiture and deeming of abandonment of the school board position “by operation of law” upon the written certification by any member of that particular school board that a problem member has not attended three consecutive duly called meetings. No findings or determination by either the board or OHA is required. We have stated that an administrative tribunal may not act outside the scope of its statutory authority and duly promulgated rules. Meadows v. Navajo Nation Labor Commission, 11 Am. Tribal Law 50, 54 (Nav.Sup.Ct.2012) (discussing the limits of the authority of the Navajo Nation Labor Commission). Unlike our courts which under 7 N.N.C. § 255 have broad discretion “to issue any writs or orders necessary and proper to the complete exercise of their jurisdiction,” the discretion of an administrative tribunal is limited to existing statutes and rules. Id. Citing Nelson v. Initiative Committee to Reduce Navajo Nation Council et al., 8 Am. Tribal Law 407, 415 (Nav.Sup.Ct.2010), (an administrative tribunal’s authority “is limited to the statutory scope of its authority and its promulgated hearing rules and regulations”). In this case, the statutory language is specific and the Council’s intent clear. Had the Council wished to permit a stay, such language would have been included. No administrative body, including the OHA, may stay forfeiture subject to any future adjudication, even in the grievance process, where clearly not permitted by statute. In this case, the OHA erred in granting a stay pending a final decision. The record shows that the stay resulted in a non-functioning board for the remainder of 2012 and kept the HPBS and its school board members in legal limbo through the November 6, 2012 general election, with consequences that are explained below.
11 N.N.C. § 142 permits the post-forfeiture filing of an “election grievance.” If a derelict school board member grieves his or her forfeiture, he or she must be able to prove that he or she had timely provided a reasonable explanation for the absences. If such just cause can be shown, the remedy in such a situation would be limited to reinstatement. Any election grievance filed under Title 11 must be handled within the expedited priority timelines provided pursuant to 11 N.N.C. § 341(A), which require a complaint to be filed within 10 days; a hearing to be held within 15 days of the filing of the complaint; and a decision to be issued by OHA within 10 days following the hearing. Under the expedited timeline, the OHA should have dealt *161 with Appellees’ grievance within twenty-five days. Instead, the continuances and order of stay meant that the OHA had this matter from July 10, 2012 to December 7, 2012, resulting in a non-functioning board for a further five months.
As it is undisputed that the Appel-lees missed three consecutive meetings without providing any explanation at the time, and further undisputed that Appellant Yazzie provided the NEA with the necessary certification and attachments pursuant to 11 N.N.C. § 142(B), this Court finds that Appellees automatically forfeited their positions by operation of law effective July 2, 2012, when the NEA served the notice of forfeiture on Appellees.
We now turn to the legal conse-quenees of forfeiture. Appellant and the NEA argue in their briefs that school board members who have forfeited their positions pursuant to 11 N.N.C. § 247 are ineligible to run for any Navajo Nation elected position, including school board membership, for at least eight years following their removal. This court agrees. As originally enacted, Section 247 was a comprehensive statute covering removal, resignation and recall of elected officials. 11 N.N.C. § 142 was enacted four years later and, we have stated, is tantamount to removal. Although Section 247 was not expressly amended to also cover the later enacted forfeiture provision, the legislative history shows that the Council evidently intended that the removal of school board members who are chronically absent be treated as harshly, if not more so, than other types of school board disqualifications. The purpose of forfeiture would not be accomplished if any removed school board member is able to simply turn ai’ound and run immediately for the same position. For these reasons, this Court finds that forfeiture pursuant to 11 N.N.C. § 142(A) is covered under 11 N.N.C. § 247, thereby rendering a school board member who has forfeited his or her position ineligible to run for any Navajo Nation elected position for a minimum of eight years from the date of forfeiture.
V
For the foregoing reasons, the Court hereby REVERSES the OHA’s December 7, 2012 decision and FINDS that Appellees automatically forfeited their school board positions by operation of 11 N.N.C. § 142, effective upon service of the Notice of Forfeiture on July 2, 2012. As of July 2, 2012, Appellees are ineligible to run for any Navajo Nation elective office for a minimum of eight years pursuant to 11 N.N.C. § 247.
It is clear to this Court that the stay of proceedings ordered by the OHA created a situation in which the Appellees in this case may have been led to believe in good faith, even though erroneous, that they could legitimately run for any Navajo Nation position in the November 6, 2012 general election. Furthermore, the OHA’s December 7, 2012 decision finding that forfeiture could not be invoked without a quorum, although made without legal basis, appeared to legitimize the results of that election pertaining to the Appellees. At this late date, the Appellees are on the verge of taking their oaths of office. The election has already occurred, with the people having spoken and the Appellees having run in good faith. However, through the issuance of this decision, the Appellees must be deemed to be ineligible to run and thereupon to serve in any elected position for eight years, effective July 2, 2012. It is incumbent on the Appellees not to take their oaths of office, and further incumbent on the NEA and the Navajo Nation Board of Election Supervisors to ensure the certified election results are *162 revised to reflect that Appellees were ineligible to run in the November 6, 2012 elections.

. Election matters are treated with priority over ordinary civil matters. N.R.C.A.P. Rule 27. The Court is not restricted from issuing a two-justice opinion where “necessary and proper" as long as the Chief Justice or his or her designate presides in the case. Nelson v. Initiative Committee to Reduce Navajo Nation Council, 9 Am. Tribal Law 204, 206-07 fn. 1 (Nav.Sup.Ct.2010) citing Benally v. Mobil Oil Corp., 8 Nav. R. 365, 368 (Nav.Sup.Ct.2003).