OPINION

A Navajo-owned corporation appeals a decision of the Office of Hearings and Appeals (OHA) upholding the Navajo Nation’s award of a contract for engineering design services to a non-Indian corporation, on the grounds that the contract was awarded in violation of Navajo business preference laws. The Court finds a violation and reverses the OHA’s decision.
BACKGROUND
Appellant Iiná Bá, Inc. (Iiná Bá) was one of several firms that responded to a Request for Proposals (RFP) for Design Professional Services issued by the Department of Water Resources (DWR) of the Navajo Nation Water Management Branch for the $20 million phases 3, 5 and 6 of the Cutter Lateral Project to provide indoor running water to 10,000 homes in the Eastern Navajo Agency. The RFP was issued under 12 N.N.C. § 346 of the Navajo Nation Procurement Act (NNPA) pertaining to “architect-engineer and land surveying services.” Iiná Bá is a certified Priority # 1 100% Navajo-owned and controlled business established in 1994, whose engineering services include hydrology, environmental science, surveying and mapping, and construction management, administration and inspection, and with a record of successful past contract performance on various previous projects on the Navajo Nation, including projects for the DWR. Findings of Fact and Conclusions of Law, OHA-NBR-001-09, p. 1 (October 18, 2010). The RFP included a scoring sheet and stated that proposals “shall be evaluated on the basis of demonstrated competence and qualifications for the type of services required, and shall be based on the evaluation factors set forth in this RFP.” Id., p. 2. The RFP further stated that the Water Management Branch would “negotiate a contract with the highest qualified business for the services contemplated” under the RFP. Appellee’s Brief, p. 4. No reference to Navajo business preference was made in the RFP.
Iiná Bá interviewed as a finalist in the selection process but finished with the second overall score. The highest scoring firm, which was non-Navajo, was selected to negotiate and ultimately awarded the contract. Iiná Bá was the highest ranking Navajo-owned business of all firms which submitted proposals. The Selection Committee consisted of the purchasing agency and a member of Navajo Design and Engineering Services.
Iiná Bá protested its non-selection to the DWR, asserting that Navajo preference in the proposal selection process is mandated by the Navajo Business Opportunity Act (NBOA), and that it should have been selected. The DWR denied Iiná Bá’s pro *450 test, stating that the NBOA did not apply to the procurement of architect-engineering and land surveying services because the selection must be based on “demonstrated competence and qualification” as required by the NNPA. Upon denial, Iiná Bá appealed the DWR’s decision to the OHA pursuant to 12 N.N.C. § 362, additionally asking for administrative review by the OHA of discrepancies in how Iiná Bá was scored.
Following a hearing, the OHA established its jurisdiction under the NNPA and upheld the DWR’s decision. The OHA declined to address scoring discrepancies on the basis that Iiná Bá had not previously protested its scores to the DWR. Citing 5 N.N.C. §§ 204 and 205, and 12 N.N.C. §§ 330 and 346, the OHA concluded that the RFP must comply with the NBOA and NNPA, and that the statutes are not “mutually exclusive” but must be interpreted to preserve the intent of both. The OHA further concluded that the NNPA “expressly states when the NBOA must be observed” and that contracts under 12 N.N.C. § 346, pertaining to procurement of architect-engineer and land surveying services, are to be awarded not on the basis of Navajo preference, but upon “demonstrated competence and qualification for the type of services required,” because the provision did not mention the NBOA and therefore was not subject to the NBOA. Whereupon, the OHA denied Iiná Bá’s protest. Findings of Fact and, Conclusions of Law, OHA-NBR-001-09, p. 8. This appeal by Iiná Bá followed.
JURISDICTION & STANDARD OF REVIEW
In its appeal, Iiná Bá raises the DWR’s violation of Navajo business preference under the NBOA and also asks for judicial review of how Iiná Bá was scored. Iiná Bá at first asked the Court to review the OHA’s decision under 7 N.N.C. § 302 under which no deference is given to the decision below. Appellee Business Regulatory Department objected, stating that 5 N.N.C. § 211(C) applies in which the Court “may substitute its judgment on those questions of law within its special competence but shall otherwise uphold the decision of the hearing officer where reasonable.” Appellee’s Brief, p. 3. Upon the Court’s request for supplemental briefs on the issue of jurisdiction, Iiná Bá abandoned its claim of jurisdiction under 7 N.N.C. § 302, and instead claimed jurisdiction pursuant to 5 N.N.C. § 211(C) and the Navajo Nation Bill of Rights (Bill of Rights) at 1 N.N.C. § 2, asserting that violation of Navajo business preference was also an abridgement of the economic opportunity right under Bill of Rights. In its supplemental brief, Appellee maintained that 5 N.N.C. § 211(C) is the proper basis for jurisdiction due to the claim of violation of Navajo business preference. At oral argument, appellee did not respond to Iiná Bá’s claim of a violation of the Bill of Rights, other than stating the claim was untimely.
While Iiná Bá’s claim of a Bill of Rights violation was not previously made below nor in its opening appeal brief, Iiná Bá has been consistent in its assertion that Navajo business preference has been violated. As discussed in greater detail in the next section, Navajo preference in business contracting is specifically protected against abridgement or denial in the Bill of Rights at 1 N.N.C. § 2, which addresses rights in relation to tribal membership and affirmative action. The Navajo Nation Bill of Rights is an organic law, rooted in our ancient values and principles as a people expressed in our fundamental laws, Diñé bi beenahaz’danii This Court has previously stated that the failure to raise Diñé bi beenahaz’áanii in the initial *451 pleading will not lead to exclusion of the claim. Judy v. White, 8 Nav. R. 510, 535-536, 5 Am. Tribal Law 418 (Nav.Sup.Ct.2004). It follows that Bill of Rights violations may be asserted at any time. In this case, as in Judy v. White, the record reflects that the appellant has placed the appellee on notice that the validity of governmental action is being challenged, even if it has failed to specifically identify the Bill of Rights violation in initial pleadings.
This Court has previously stated that a claimant must first assert a property or liberty interest that is protected by due process and which is being deprived in some way by governmental activity. Yazzie v. Jumbo, 5 Nav. R. 75, 76 (Nav.Sup.Ct.1986). The same principle applies to Navajo business preference in support of the economic opportunity right. A claim under 1 N.N.C. § 2 is stated when entitlement to Navajo business preference is first asserted followed by the claim that preference law has been violated. Iiná Bá has made these assertions from the very beginning of its administrative appeals.
This Court has the power to address violations of the Bill of Rights as a result of legislation or governmental action because “the Navajo Nation Bill of Rights is a fundamental overriding statute which by its own terms and necessary implications, allows judicial review to decide whether another law or an act of the Navajo Nation Government is void because of a violation of fundamental rights.” Bennett v. Navajo Bd. of Election Supervisors, 6 Nav. R. 319, 323 (Nav.Sup.Ct.1990). In short, the jurisdiction of this Court over claims of civil rights violations emanates from the Bill of Rights itself, in this case 1 N.N.C. § 2. Additionally, this Court has “exclusive jurisdiction” over all decisions of the OHA unless “otherwise provided by law.” 2 N.N.C. § 1057. Specific standards of review of the OHA’s decisions in diverse areas may be provided which define the parameters of judicial review and provide for the degree of finality to be accorded fact-finding decisions of the administrative tribunal.[1] In this case, the NBOA limits judicial review to matters of law within the administrative record, and requires the Court to uphold the OHA’s decision “where reasonable.” 5 N.N.C. § 211(C). The NNPA, established subsequent to the NBOA, provides that the decision of the OHA “shall be final and conclusive” in a provision entitled “Presumed Finality of Decisions.” 12 N.N.C. § 364. In application, the NNPA’s standard of presumed finality is no different *452 than the standard set forth in the NBOA, and has no effect on this Court’s jurisdiction nor its ability to address the OHA’s decisions on the basis of law. This Court will apply a de novo standard of review of legal interpretations by lower courts or administrative agencies. Wauneka v. Yazzie, 11 Am. Tribal Law 153, 156 (Nav.Sup.Ct.2013) (internal citation omitted).
DISCUSSION
The Navajo Bill of Rights was enacted in 1967. In 1986, the Bill of Rights was amended to include economic opportunity as a civil right and to prohibit the Bill of Rights from being “abridged or deleted” except by referendum vote of the people. Navajo Council Resolution No. CD-59-86, Amending and Reenacting the Navajo Nation Bill of Rights (passed December 11, 1986). Section 2 of the Bill of Rights, as amended, states:
Equality of rights not abridged by entitlements, benefits or privileges; nor by affirmative action necessary to support rights of the Navajo People to economic opportunity Recognition, enactment, lawful implementation and enforcement of provisions for specific entitlements, benefits, and privileges based upon membership in the Navajo Nation or in other recognized Tribes of Indians and affirmative action in support of Navajo or other Indian preference in employment and business contracting or otherwise necessary to protect and support the rights of Navajo People to economic opportunity within the jurisdiction of the Navajo Nation, shall not be abridged by any provision herein nor otherwise be denied.
1 N.N.C. § 2 (emphasis added).
While the above provision addresses Navajo and Indian preference in employment and business contracting, this appeal concerns only Navajo preference in business contracting as asserted by a certified Navajo-owned business. There is no doubt, from the plain wording of the Bill of Rights, that Navajo preference in business contracting is stringently protected. The wording, “shall not be abridged by any provision herein nor otherwise be denied,” literally means that Navajo preference in business contracting, in place at the time of the amendment to the Bill of Rights, has been given permanent protections against being “abridged” or “denied” by subsequent legislation or other governmental action. Pursuant to 1 N.N.C. § 1 as amended, “[n]o provision of ... the Navajo Nation Bill of Rights, shall be abridged or deleted by amendment or otherwise, except by referendum vote of the Navajo electorate, in accordance with applicable provisions of the laws of the Navajo Nation.” There can be no doubt of the Council’s intent to safeguard our preference laws in business contracting against future changes except by the people themselves. The issue is what constituted Navajo preference in business contracting at the time the Bill of Rights was amended? While such preference laws may not be abridged by subsequent legislations or actions, exceptions to preference that were enacted prior to the amendment of the Bill of Rights are presumed valid.
The original Navajo Nation Business Preference Law was enacted in 1985, codified at 5 N.N.C. §§ 201-218, and preceded the Bill of Rights amendment by more than a year. The 1985 law laid the statutory foundation for the requirement of preference to be applied uniformly to certified Navajo-owned businesses in regard to transactions above a certain monetary amount. The 1985 law also set forth certain enumerated exceptions for which the business preference law was, and remains, inapplicable. Namely,
*453 The provisions of this Act shall not apply to the negotiation, execution, award, transfer, assignment or approval of mineral or non mineral leases, subleases, permits, licenses and transactions which are governed by other applicable laws and regulations of the Navajo Nation and the United States; provided that the provisions of this aet as amended from time to time, together with all rules and regulations lawfully adopted hereunder, shall apply to all contracting, subcontracting and procurement activities conducted hereunder ...”
Council Resolution No. CJY-59-85, Section 3.2 (July 30,1985).
The above exceptions, having been put in place prior to the protection against abridgement in the Bill of Rights, are presumed valid. None of the exceptions include architect-engineer or land surveying procurement contracts or proposals. The Navajo Nation Business Preference law was later amended twice: in 2002 when it was renamed the NBOA and recodified at 5 N.N.C. §§ 201-215, and in 2005. The amendments added detail to the non-mineral lease exception and clarified the non-application of the Act to activities of private persons who contract for goods or services for their individual use. 5 N.N.C. § 203(C), as amended. The current NBOA continues to apply the foundational Business Preference Law to “all contracts, subcontracts, grants and sub-grants issued by public and private entities within the Navajo Nation,” requiring private and public entities “to grant first opportunity and contracting preference to qualified Navajo-owned or Indian-owned businesses.” 5 N.N.C. §§ 201(E) & 205.
There is a basic principle in our courts that a statute should be read as a harmonious whole, with its separate parts being interpreted within their broader statutory context in a manner that furthers a clearly expressed statutory purpose. Where a provision is part of such a larger scheme, the whole of that scheme necessarily figures in the interpretation of that provision. NHA v. Johns, 11 Am. Tribal Law 31, 38-39 (Nav.Sup.Ct.2012). In this case, the NBOA, the 1986 Navajo Business and Procurement Act, 12 N.N.C. § 1501 et seq., and the NNPA jointly apply in the area of business contracts and services. The NBOA requires “first opportunity and contracting preference to qualified Navajo-owned or Indian-owned businesses for all contracts, subcontracts, grants and subgrants issued by public and private entities within the Navajo Nation.” 5 N.N.C. § 201(E) (emphasis added). The NBOA also sets forth certification and bid opening procedures for public and private businesses, while the NNPA sets forth sealed proposal processes, further bid opening and evaluation processes, and other procurement processes applicable to the Navajo Nation with the purpose “[t]o simplify, clarify, and modernize the law governing procurement by the Navajo Nation, to foster effective broad-based competition within the free enterprise system to the extent consistent with the purposes and provisions of the Navajo Nation Business Opportunity Act.” 12 N.N.C. § 301(B) (emphasis added). Clearly, the NBOA and NNPA must be read together as part of a single statutory scheme in order to fulfill their legislative purpose. In this scheme, the original business preference law as amended and re-named the NBOA, by its own wording is the bitsisiléi, bindii’ái foundational and root statute governing the awarding of all business contracts and procurements on the Navajo Nation.
Appellee asks this Court to, essentially, find an implied waiver of the NBOA’s preference requirements in procuring NNPA architect-engineer and land surveying services for the following reasons: (1) the *454 NBOA’s selective bid opening sequence procedures apply only to certain sealed bid openings, not the opening of proposals pursuant to RFPs; (2) the NNPA at 12 N.N.C. § 346 is one of five listed exceptions to sealed competitive bidding and contains no reference to the NBOA, which shows the Council’s intent to except this provision from the NBOA; additionally, section 346 specifically requires architect-engineering and land surveying services to be procured based on “demonstrated competence and qualifications” and mandate that the most highly qualified be contracted, not simply the minimally or barely qualified; and (3) the Council singled out architect-engineer procurements for special treatment by removing the word “proposals” from the NBOA in the 2005 amendments, and by borrowing language from the Arizona Procurement Code for 12 N.N.C. § 346 which emphasizes “the importance of selecting the best qualified firm” because “the architect, engineer, or land surveyor is engaged to represent the State’s interests and is, therefore, in a different relationship with the State from that normally existing in a buyer-seller situation.” Appellee’s Brief, p. 12 citing the American Bar Association’s “Model Procurement Code for State and Local Governments.” Additionally, appellee states that Iiná Bá was on notice that preference would not be applied, as the RFP clearly stated that it would be a qualifications-based selection and preference was not referred to in the RFP. Id., p. 4. Appellee’s arguments fail to persuade, for the following reasons.
As discussed above, 12 N.N.C. § 301(B) requires all provisions of the NNPA to comply with the NBOA. Additionally, two express statutory laws prohibit the reading of any implied waiver into any statute in regards to Navajo preference in business contracting. The first, 1 N.N.C. § 2 of the Navajo Bill of Rights, as amended in 1986, literally provides that Navajo preference in business contracting “shall not be abridged by any provision herein nor otherwise be denied,” meaning that legislated waivers of preference in business contracting—whether express or implied—are prohibited “except by referendum vote” as required at 1 N.N.C. § 1. The second, 5 N.N.C. § 206, was enacted in 1985 as part of the original business preference law and safeguards preference in business contracting against implied waivers by requiring that waivers of the NBOA must be by “valid resolution of the Navajo Nation Council.” Read together, there can be no abridgement of preference in any area of business contracting except by Council resolution as duly approved by a referendum vote of the people. The NBOA applies to all procurements not validly excepted, and the omission of its mention in any specific provision within the statutory scheme of our business laws, does not mean that the specific provision has been excepted from NBOA requirements. The OHA erred in finding that the NBOA was non-applicable to the NNPA at 12 N.N.C. § 346 simply because it was not mentioned in that provision.
Appellee believes that the sum total of implied circumstances, including non-mention of the NBOA, requirement of “highest qualifications,” and borrowing language from a state law provision, shows the Council’s clear intent to remove architect-engineer and land surveying services from the NBOA. Appellee is basically saying that preference shouldn’t apply to architect-engineer and land surveying services because such services are a government function on the Navajo Nation no differently than in Arizona. However, appellee neglects to include any discussion of the differences between the rights of Navajo Nation and Arizona citizens in the *455 area of government contracting. The citizens of Arizona do not have the fundamental right of economic opportunity that is enjoyed by the citizens of the Navajo Nation, nor is the Navajo right of affirmative action in governmental business contracting set forth in the Arizona Declaration of Rights. We are a sovereign Nation with unique governmental respon-sibiliti.es, whose citizens have unique rights, and do not simply mirror the context of states.
We briefly dispose of appellee’s other arguments as follows. The meaning of “qualified” or “qualifications” is undefined in our business laws. As generally understood, “qualified” may include compliance with specific requirements or status conditions such as residency, citizenship, or tribal membership.[2] Next, the NBOA refers specifically to proposals at 5 N.N.C. § 205(a) in requiring a determination of maximum feasible price, while all competitive sealed proposals, without exception, “shall be conducted in a manner consistent with the procedures set forth in the Navajo Nation Business Opportunity Act” and “shall refer to the preference of Navajo and Indian-owned businesses under the Navajo Nation Business Opportunity Act.” 12 N.N.C. § 332(A) and (B). In short, proposals are not excepted from the NBOA merely because the Council deleted most references to proposals in the NBOA upon amending the NBOA in 2005.
This Court recognizes that human beings draft laws, which therefore are subject to human error. In this case, the Council may well have intended for architect-engineer and land surveying services to be excepted from our preference laws. However, by asking this Court to glean intent from implications alone without express wording and without offering any legislative history, appellee has not persuaded this Court of the existence of any such intent. Additionally, even if an intent to except architect-engineer and land surveying services from the NBOA did exist, the NBOA absolutely prohibits the Council from waiving preference in our business laws without an express waiver through a duly passed resolution, while our Bill of Rights would additionally require a referendum vote of the people.
12 N.N.C. § 346 contains no language stating or even implying that preference does not apply to architect-engineer and land surveying services. For this reason, there is no need to invalidate this provision and there is no need for new legislation. However, the existing section 346 must be properly interpreted. Omission of references to the NBOA or preference in a single provision does not except that provision from implementing preference when the provision is part of the statutory scheme of which the NBOA is the foundational law. It is our holding that 12 N.N.C. § 346 may not be interpreted as an exception from Navajo preference in business contracting. “Qualifications” and “qualified” as set forth in section 346 include fulfillment of all conditions prescribed by our business laws for companies *456 engaging in business on the Navajo Nation, including Navajo preference in business contracting. Section 346 requires public announcement of contract requirements, requires the Division of Finance or head of a purchasing agency to encourage firms to submit an annual statement of qualifications and performance data, and requires a Selection Committee for each and every architect-engineer and land surveying contract over $250,000 to evaluate the statements of qualifications and performance and, out of all firms responding to an RFP, “shall select therefrom, in order of preference, based upon criteria established and published by the Selection Committee, no less than three of the firms” to conduct discussions for furnishing the required services; from these, the highest qualified shall be selected for negotiation of a contract award and, failing to reach an agreement, then the next highest qualified. 12 N.N.C. § 346(A)-(D) (emphasis added). Evaluation criteria established and published by the architeet-engineer and land surveying Selection Committee pursuant to 12 N.N.C. § 346(B) shall include requirements for Navajo preference.
We find that the NBOA was violated when the RFP issued by the DWR failed to include selection criteria for Navajo business preference. Pursuant to 12 N.N.C. § 346, the Selection Committee should have included the Division of Finance, and had the duty and authority to include preference scaling in their scoring criteria, but failed to do both. We further find that Iiná Bá’ was entitled to Navajo business preference under the Bill of Rights, and its civil rights were violated when preference was not applied in this case.
We would add that the court’s task of interpreting the NBOA and the NNPA in a comprehensive manner was difficult because of the lack of rules and regulations for the NBOA as required by 5 N.N.C § 207 (as admitted by the Navajo Nation at oral argument), and the lack of review since 2003 for potential revision of the NNPA Rules and Regulations (December 16, 2003) (approved by Budget and Finance Committee Res, BRFD-192-03) as required by 12 N.N.C. § 320 (mandating review at least every two years).
At oral argument, Iiná Bá informed this Court that it realizes it is unrealistic to unwind the contract already awarded to the non-Navajo firm, which has been performing on the contract and for which the contracted services are nearing completion. Iiná Bá stated that its goal is to clarify our preference laws for the future rights of Navajo business owners. Our holding in this case fulfills Iiná Bá’s stated goal. For violation of the Bill of Rights, attorney costs and fees may be granted pursuant to 1 N.N.C. § 554(F)(5). This Court shall so order.
DINÉ FUNDAMENTAL LAW
The Navajo-owned business in this case, while not the highest scorer, had a record of successful federal, state and tribal government contract performance, was rated competent and able to perform the specific multi-million dollar government-funded services, and beat out even non-Navajo firms in achieving a second overall score. While others might characterize the purpose of any affirmative action program as one of leveling the playing field to enable fair competition,[3] in our civilization, eco *457 nomic self-sufficiency is not a race, nor is it an entirely individual interest; it is a collective tribal interest. In relation to leases, we have stated that “[a] land use decision by the people through their governments is the balance struck between the individual land user and the needs and desires of the community.” Navajo Nation v. RJN Construction Mgmt., 10 Am. Tribal Law 265, 272 (Nav.Sup.Ct.2012) citing Navajo Nation v. Arviso, 8 Nav. R. 697, 703, 6 Am. Tribal Law 675 (Nav.Sup.Ct.2005). Diñé bi beenahaz’áanii teaches that the rights and freedoms of the individual are not the only considerations. Id. citing Resolution No. CN-69-02, Exh.A § 2(A), (B) (Nov. IB, 2002). The rights and freedoms of the people as a whole must also be recognized. Id. citing Arviso. The economic goal, and the obligation of government in supporting that goal, are defined by ancient principles. “To the extent that those customs and traditions are fundamental and basic to Navajo life and society, they are higher law.” Bennett, 6 Nav. R. at 324.
The government’s obligation to enforce the economic opportunity civil right goes to the core of tribal sovereignty itself in safeguarding the continuation of our communities and heritage. Hózhóogo Una, literally meaning doing the harmonious plan, that the Diñé shall live together as a viable community on our sacred lands in order to continue our way of life, Una doo ninit’i, which is an immutable principle of Dine bi beenahaz’áanii. In enacting 1 N.N.C. § 2, the Council acknowledged the urgency of this principle when it found, at 5 N.N.C. § 201(B)(6), that the people continue to be under-represented in the award of Navajo Nation business contracts.
For Diñé, the principle of nahat’á, embodying economic opportunity, means more than alleviating the effects of poverty or economic injustice. It means providing opportunities to prosper on our own lands, and thereby the means of survival of our people as a community and sovereign nation. While there have been long periods in which the Diñé, through a lack of education and poverty have been denied access as individuals to become self-sufficient, it is not so much the case in the modern era. Today, the learning of modern skills to be self-sufficient is achieved through education. Education has resulted in Navajos owning and operating engineering, architecture, law, medicine, accounting and other professional businesses. The fundamental teaching of t’áá hwó ájít’éego t’éiyá is the basis of self-sufficiency. Diñé self-sufficiency teaches that the obligation of Diñé individuals to take care of themselves impacts the community, which relies on the survival of individuals in order to continue to exist as a cohesive people. The Navajo translation of “economic self-sufficiency” is t’áá nihi ák’ineildzil dm adiká’ adiil-wol—to learn all the skills that you can to fulfill your responsibility to survive, that you will not go hungry, that you will not be thirsty, that you will have a roof over your head and that you will have clothing to cover you, and to ensure that you provide these essentials of life for your families. The relevance of this teaching is that it is going to have to take one’s individual hard work and sacrifices {t’áá hwó ájít’éego t’éiyá ) to leam the skills necessary to sustain a prosperous life for an entire community. It is up to our leaders to make this possible, and it is within this teaching of Diñé self-sufficiency that our *458 leaders created the NBOA and the NNPA.
We have stated that exceptions to Navajo preference in business contracting which preceded the amended Bill of Rights are presumed valid. We would note, in closing, that Diñé bi beenahaz’áanii does not call for the rigid application of rules of statutory construction, but does require the absolute application of fundamental principles. Rules of statutory interpretation give way to specific and actual cultural values. See, e.g., In re Harvey, 6 Nav. R. 413, 414-415 (Nav.Sup.Ct.1991) (rejecting statutory interpretation regarding the disposition of property under general principles of Anglo American law in favor of an interpretation based upon both the Navajo common law and judicial economy). Nau-ta’aniis are required to be conscious of their authority to find sacred solutions. People have expectations that the public treasury will be used by their government in a manner that benefits the Navajo people and Navajo-owned businesses. It is presumed that “the Navajo Nation Council would not intend to violate the Navajo Nation Bill of Rights by enacting conflicting law.” In re Certified Question from, the United States District Court for the District of Arizona, 8 Nav. R. 132, 138-139, 3 Am. Tribal Law 497 (Nav.Sup.Ct.2001). Leaders do not ever lay down the people’s trust and the laws because a leader is taught that they must find the solution, for it is always available. “[A]s demonstrated in the design of the sacred wedding basket, a leader through adherence to the laws, the analysis of the stories of the Diñé journey, and a positive approach will find a solution (bi’q’iídzá) around, through, or over that which confronts the people.” See Thinn v. Navajo Generating Station, 7 Am. Tribal Law 558, 564 (Nav.Sup.Ct.2007).
CONCLUSION
Based on the foregoing, the OHA’s findings and conclusions of law are hereby REVERSED. 12 N.N.C. § 346 SHALL be interpreted consistent with this opinion. The Court GRANTS lina Bá’s request for attorney’s fees and costs on appeal, which are reasonable and necessary, pursuant to 1 N.N.C. § 554(F)(5). Iiná Bá is to submit its invoice for attorney’s fees and costs to this Court.
Additionally, the Court directs the Resources and Development Committee (successor to the Economic Development Committee) to promulgate NBOA rules and regulations as mandated by 5 N.N.O § 207. Further, the Court directs the Budget and Finance Committee per 12 N.N.C. § 320 to revise the NNPA rules and regulations consistent with this opinion.

. See, e.g., 9 N.N.C. § 1709(C) (Child Enforcement Act) (providing that the Supreme Court shall not reconsider questions of fact determined by the OHA); 15 N.N.C. § 1011 (Workers Compensation) (limiting appeal to the appellate record and questions of law); 11 N.N.C. §§ 24(G), 341(A)(4), and 404(B)(14)(b)(7) (Election Code) (limiting judicial review "to whether or not the decision of the Office of Hearings and Appeals is sustained by sufficient evidence on the record"); 5 NNC § 3711(1) (Corporations) (limiting review to the administrative record while providing that the Court "may substitute its judgment on those questions of law within its special competence but shall otherwise uphold the decision of the hearing officer where reasonable”); 2 NNC § 3771 (Ethics in Gov-eminent Law) (limiting appeals to questions of law); and 15 NNC § 1491 (NOSHA) (providing that "the findings of the hearing officer with respect to questions of fact, if supported by substantial evidence, shall be conclusive”); and 16 N.N.C. § 2289(E) (Civil Trespass Act) (providing that the decision of the OHA "shall be final”). Distinguish these from where the Council has explicitly provided that an OHA decision is non-appealable. See 12 N.N.C. § 9(D) (Concerning sanctions imposed by Controller on government officials and approved by the Budget and Finance Committee for failure to implement corrective action plan) (providing that “[tjhe decision of the Office of Hearings and Appeals shall be final and no appeal shall lie to the courts of the Navajo Nation.”)

. Note that the 1986 Navajo Business and Procurement Act, which generally implements the NBOA in the area of procurements, sets forth conditions precedent at 12 N.N.C. § 1504-5 for business entities to be eligible to do business with the Navajo Nation, including submission of evidence that the entity does not owe a debt to the Nation, has not previously defaulted on or failed to meet material contractual obligations, has not been found to have engaged in certain criminal or unlawful acts, or been convicted of such acts within the past 10 years. Additionally, the Navajo Nation Corporation Act (NNCA) at 5 N.N.C. §3166 requires a foreign corporation to comply with the NNCA before it has the right to transact business within Navajo Indian Country, including registration as a corporate entity-

. In 1965, U.S. President Lyndon Johnson explained the rationale behind the importance of affirmative action implemented by the federal government: “You do not take a person, who for years, has been hobbled by chains and liberate him, bring him up to the starting line of a race and then say 'you are free to compete with all the others,’ and still believe *457 that you have been completely fair." Commencement Address at Howard University:
To Fulfill These Rights, June 4, 1965.